[Civ. No. 8468.   Third Dist.   Mar. 8, 1955.]

EDWARD G. McGRATH, Appellant, v. WILLIAM J. BURKHARD, as Superintendent of Sacramento City Unified School District, et al., Respondents.

Charles F. Gray, Jr., for Appellant.

Joseph Genser and Louis L. Edmunds, as Amici Curiae on behalf of Appellant.

J. Francis O'Shea, District Attorney (Sacramento), William A. Green, Assistant District Attorney, and John B. Heinrich, Deputy District Attorney, for Respondents.

SCHOTTKY, J.—Plaintiff, a teacher in the Sacramento Senior High School, commenced an action for declaratory relief against defendant superintendent of Sacramento City Unified School District, the board of education of said district and the individual members of said board, and the principal of the Sacramento Senior High School. Plaintiff sought declaratory relief on the ground that the nonclassroom assignments, as hereinafter detailed, did not fall within the scope of his duties as a teacher under the terms of his contract of employment, and that such duties were unprofessional in nature. Plaintiff asked the court to declare the rights and duties under the contract of employment; that the nonclassroom work was not within the scope of employment; that plaintiff should not be assigned duties on a teaching day which required more than eight hours per day to perform competently; that if more than eight hours may be assigned the court should declare the number of hours per day plaintiff is obligated to perform under the contract; that no duties be assigned on days for which he is not paid, i. e., Saturdays, holidays and most nonteaching days.

Defendants denied the material allegations of the complaint and following a trial the trial court concluded (1) that the respondent board has the right to assign to appellant any teaching duties within the scope of his credential, provided that such assignment does not reduce the rank and grade of his position below the rank and grade of the position held by him during his probationary service with the Sacramento City Unified School District, (2) that the board has the right to assign appellant to assist in the supervision of athletic and social activities conducted under the name or auspices of the Sacramento Senior High School, provided the assignments are made impartially and without discrimination, and (3) that since appellant's employment is professional in nature the services cannot be arbitrarily measured,

but depend upon the reasonable needs of the school program; however, the hours of such services must be reasonable.

Plaintiff has appealed from the judgment entered in accordance with said conclusions. Before discussing the contentions made by plaintiff and appellant we shall summarize the factual situation which is not in substantial dispute.

Appellant is a teacher in the Sacramento Senior High School. From 1942 to 1945 he was employed as a long term substitute teacher; from July, 1945, to July, 1948, he was employed as a probationary teacher and from July, 1948, to the date of this action he was employed as a permanent teacher. He achieved the status of tenure in 1948.

At all times appellant has been employed under a written contract, which incorporates the rules of the respondent Board of Education.

During his course of employment by respondents, appellant and other male teachers have been required to attend certain nonclassroom activities and act in a supervisory capacity. The activities are school football and basketball games, which are under the auspices and control of the school authorities. These games may be held at places other than on the school grounds. Six of these athletic assignments are made to each male member of the faculty during each school year, three football games and three basketball games. At the beginning of the school year each male teacher selects the three football games at which he would prefer to supervise; at the end of such season he then selects the three basketball games at which he would prefer to attend in a supervisory capacity. To the extent possible the requests of the teachers are complied with in the scheduling of these assignments, but at times a teacher receives an assignment on a date other than the one he had selected. The teachers are selected impartially and without discrimination. For many years past this administrative practice of assigning the male teachers to supervise at the school athletic contests in football and basketball has been carried out to protect the welfare of the students. The teachers have no authority to act as police officers, but policemen are present at the games to handle any situation in which their authority is needed. Appellant testified that the teacher's duties at these games consisted of maintaining order in the student section of the stands, sitting in the student section, reporting disturbances to the police, preventing spectators from going on the playing field, clearing the way for the

band or drill teams, guarding seats saved for the band and drill team members, checking credentials at the press box, patrolling under the bleachers at basketball games, controlling conduct of the students, preventing smoking in the gymnasium by students or adults and preventing spectators from entering the gymnasium with soft drinks, candy or other food. The female teachers of the school are given assignments to supervision of nonclassroom activities, but of a different nature, as supervising in the cafeteria, variety shows and dances.

Appellant did not object to these assignments during the time he served as a long term substitute teacher or during the three years he served as a probationary teacher, but after he attained the status of permanent teacher appellant objected to these assignments and failed to cooperate in the performance of such duties. Effective July 1, 1950, the respondent board of education transferred appellant from chairman of the Social Studies Department to a full time teacher of English. In lieu of the nonclassroom assignments appellant was assigned an extra class to teach, so that he and an industrial arts teacher are the only ones who teach six class hours per day. This is in accordance with a rule of the school and apparently is the first time in several years that it has been used. Since this time appellant has not received any athletic assignments.

Appellant first contends that he is under no contractual obligation in regard to the athletic assignments and that if so obligated, the required duties are unreasonable and not within the scope of teaching duties. He states that such obligation is nowhere set forth in the contract, the rules of the board of education, nor in the laws of the State of California. While it is true that this specific duty is not set forth, a study of the evidence and the provisions set forth in the Education Code and the Administrative Code reveals that the assignment complained of by appellant is and was within the contemplation of the parties when the contract of employment was entered into. Relevant portions of each are set out below:

Education Code, section 2204. "The governing board of any school district shall: (a) Prescribe and enforce rules not inconsistent with law or with the rules prescribed by the State Board of Education, for its own government, and for the government of the schools under its jurisdiction."

Education Code, section 13201. "The governing board

of each school district shall fix and prescribe the duties to be performed by all persons in public school service in the school district.''

These sections provide for the delegation of rule making authority, so that the correct body can prescribe exactly what the duties are. In connection with this, certain rules promulgated by the State Board of Education must be considered. The following excerpts are taken from the California Administrative Code, title 5, article 3, which is entitled ''Duties of Principals and Teachers.''

''Section 16. Responsibility of Principal. The principal is responsible for the supervision and administration of his school.''

''Section 18. Playground supervision. Where playground supervision is not otherwise provided, the principal of each school shall provide for the supervision, by teachers, of the conduct and direction of the play of the pupils of the school or on the school grounds during recesses and other intermissions and before and after school. All athletic or social activities, wherever held, when conducted under the name or auspices of any public school, or of any class or organization thereof, shall be under the direct supervision of the authorities of the district.''

''Section 24. Moral supervision. Principals and teachers shall exercise careful supervision over the moral conditions in their respective schools. Gambling, immorality, profanity, frequenting public pool rooms, the use of tobacco, narcotics and intoxicating liquors on the school grounds, or elsewhere on the part of pupils shall not be tolerated.''

The Education Code also sets forth certain general duties required of all teachers in the public schools, as section 13228 which requires enforcement of the course of study, the use of legally authorized textbooks, and the rules and regulations prescribed for schools; section 13229 which requires that pupils be held to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess; and section 13230 which requires instruction and teaching in the principles of morality, truth, justice and patriotism, ''and to train them up to a true comprehension of the rights, duties, and dignity of American citizenship.'' These provisions relate to all teachers in the public school system. Of course, the State Board of Education has expressed other duties which are required of teachers, as shown in the above excerpts from the Administrative Code. The

local governing board has power delegated to it to make the necessary rules and regulations which its district requires. (Ed. Code, §§ 2204, 13201.) And finally, the principal has the necessary power which is inherent in his office to properly administer and supervise his school.

Appellant's contract expressly set forth that it was subject to the laws of California, the rules of the State Board of Education and of the local governing board. The trial court found that the rule of the Sacramento City Unified School District with reference to the athletic assignments was a part of appellant's contract. The code provisions relating to the duties of teachers do not set forth the particular duty which is the subject of this controversy. The rules promulgated by the State Board of Education do not set forth such specific duty. However, the rules in article 3 of title 5 of the Administrative Code do show that the principals and teachers are charged with certain duties, for example, sections 16, 18 and 24, quoted *supra*.

Appellant contends that the title of section 18 shows that the intent was to provide supervision for play activities of young children on the school playground. He also contends that the second sentence of said section referring to the athletic and social activities does not relate to teachers, his reason being that because the first sentence of the section expressly refers to teachers and the second sentence does not mention teachers it necessarily follows that they are not included in such sentence. We do not agree with this contention as said section 18 is included in the article which is entitled "Duties of Principals and Teachers." This section places playground supervision not otherwise provided for under the direction of the principal and also makes the authorities of the school district responsible for the direct supervision of all athletic or social activities conducted in the name or under the auspices of the school regardless of where they are held. To carry out this responsibility, respondent board requires teachers to attend certain athletic and social activities in a supervisory capacity. The athletic games of his assignments, to which appellant complains, are conducted under the name and auspices of the Sacramento Senior High School. Sometimes they are held off of the school grounds, as generally the home football games are conducted at the local stadium. Section 18 clearly places upon the authorities of the district the duty to supervise these activities. This section does not expressly place the

particular duty in controversy upon the teachers, but such duty is placed upon the district authorities who in turn have properly delegated it to their representatives and agents. One of the published rules by respondent board in regard to matters of supervision requires teachers to cooperate with their superiors. This is absolutely necessary to carry out the proper administration of the district.

While it is true that the rule requiring teachers to fulfill the athletic assignments is not expressly set forth in the printed booklet of rules and regulations of the Board of Education of the Sacramento City Unified School District, it is also true that none of the nonclassroom duties required of the teachers are set forth therein, and yet the teachers are fully aware of such duties as cafeteria assignments, variety shows, club sponsors and duties at commencements, etc. All of these duties are supervisory in nature and a minute detailing of them is quite unnecessary, notwithstanding appellant's contention that they should be specifically set forth. These duties are so interrelated with the other duties of the teacher and his position that it is not necessary that each one of them be specifically stated. The booklet of rules and regulations does state that ''In matters of supervision teachers shall work cooperatively with special supervisors, the Principal of the school and the Assistant Superintendent in charge.'' And it is clear from the evidence that appellant was fully aware of the rule and practice as to these athletic assignments when he entered into the contract with the respondent district, and that it was within the contemplation of the parties to the contract.

Furthermore, the general rule is, as stated in 24 Ruling Case Law, at page 574:

''There is no necessity that all the rules, orders and regulations for the discipline, government and management of the schools shall be made a matter of record by the school board, or that every act, order or direction affecting the conduct of such schools shall be authorized or confirmed by a formal vote.''

Appellant's next major contention is that even though the board has the authority to make the athletic assignments, the specific duties performed by the teachers at the games are unreasonable and not within the scope of their teaching duties. Appellant cites the case of *Parrish* v. *Moss,* 106 N.Y.S.2d 577, in support of this contention, and the same case is cited and relied upon by respondents. In

that case some teachers were seeking to set aside a board regulation which stated that: "... 1. Every teacher is required to give service outside of regular classroom instruction in the performance of functions which are the essential duties of every teacher. 2. There is an area of teacher service which is important to the well rounded educational program of the students, but in which teachers participate in varied ways according to their interests, capabilities and school programs. The principal has the responsibility and duty to see to it that these activities are carried on. The principal may assign a teacher to reasonable amounts of such service beyond the specified hours of classroom instruction, and the teacher is required to render such service. ..." One ground of attack was that this unlawfully delegated to the principals the power to fix the duties and hours of the teachers without providing for adequate protection of the teachers. The court held that such position was not tenable, and upheld the regulation as valid. In its decision the court quoted from language used by the commissioner in a prior controversy which involved a ruling of the New York City Board of Education that required teachers to obtain a 1951 Red Cross first-aid certificate, in which the commissioner stated that any teaching duty within the scope of the teacher's license may properly be imposed, but the required hours of extracurricular activities must be reasonable and the required duty must not be foreign to the field of instruction, as teachers may not be required "to perform janitor service, police service (traffic duty), school bus driving service, etc. ..." The court also said in the course of its opinion, at page 584:

"The hours established in any case must be reasonable. The broad grant of authority to fix 'duties' of teachers is not restricted to classroom instruction. Any teaching duty within the scope of the license held by a teacher may properly be imposed. The day in which the concept was held that teaching duty was limited to classroom instruction has long since passed. Children are being trained for citizenship and the inspiration and leadership in such training is the teacher. Of course, it is recognized that any bylaw of a board outlining teachers' duties must stand the test of reasonableness."

Appellant seeks to apply the language of *Parrish* v. *Moss*, *supra*, to the instant case and asserts that the trial court should be reversed since the duties at the athletic contests were (1) in the nature of police work, (2) unprofessional,

(3) foreign to the field of instruction, and (4) imposed unreasonable hours, and therefore were not within the scope of the teaching duties required by the contract. However, the record does not sustain appellant's contention in this regard. The teachers have no authority to act as police officers; in fact, they are expressly informed that their duties are supervisory only. At no time is a teacher to exert police powers. The teachers are to act in a supervisory capacity, much as they do at school assembly meetings, etc. They are acting to protect the welfare of the students. Appellant asserts that he has received no training for this type of work and that the evidence suggests, since women are not assigned this type of duty, that physical strength is a requisite and that the motivating reason for the assignments is to quell and put down disturbances, which is in the nature of police duty. The record refutes appellant's statement. From the deposition of Dr. Murphy, the principal at Sacramento Senior High School, it appears that he was asked questions directly on this point and he replied that the duties did not relate to physical strength or power and stated that he thought many of the female teachers could perform the duties at the games. He stated that he thought that a man's presence at the games was more effectual on the students than a woman's and that it just seemed to be more of a man's job. In explaining this he stated that the work in cafeteria supervision seemed to be more in line with a woman's presence than a man's. Appellant states that the duties were degrading, humiliating and unprofessional. Certain instances are cited. Dr. Murphy admitted that the duty was disagreeable to some, but he felt that it was the same with some women with the cafeteria assignments, or with anyone when he has to perform a task which he does not like, and apparently this is especially so with some teachers when they are faced with these types of supervisory duties. All public school teachers have general duties as expressed by the Education Code, sections 13228, 13229 and 13230, *supra,* relating to the control of the conduct of pupils, endorsement of rules and the training of them to be good American citizens. Coupled with these are the rules of the State Board of Education in article 3 of title 5 of the Administrative Code, which relate to certain duties, and section 24 in particular, quoted *supra,* which requires principals and teachers to exercise careful supervision of moral conditions in the schools and not to tolerate participation by students in gambling, pro-

fanity, the use of intoxicating liquors, etc., on or off the schoolgrounds. Teachers are expected to perform these obligations. It is of great importance that the association of teacher and pupil should tend to inculcate in the latter principles of justice, fair play, good sportsmanship, good citizen ship and respect for rules and authority. Viewing the duties at the games in light of the above, it is apparent that they are not of an unprofessional nature. For as stated in the case of *Parrish* v. *Moss, supra,* so strongly relied upon by appellant, ''The day in which the concept was held that teaching was limited to classroom instruction has long since passed.''

Appellant's final contention is that the duties here involved impose unreasonable hours. The record shows that six of these assignments are made in a school year from September to the following June. Generally, the hours are evening ones, from about 6 or 7 o'clock to 10 o'clock. Some assignments fall on Saturday evenings or on Thanksgiving Day. Appellant also claims that the Saturday or legal holiday on which an assignment occasionally occurs is a day of duty for which he is not paid. However, appellant is not paid on a basis of so much per hour worked. Teachers are engaged in a professional employment. Their salaries and hours of employment are fixed with due regard to their professional status and are not fixed upon the same basis as those of day laborers. The worth of a teacher is not measured in terms of a specific sum of money per hour. A teacher expects to and does perform a service. If that service from time to time requires additional hours of work, a teacher expects to and does perform it. If that service from time to time requires additional hours of work, a teacher expects to and does put in the extra hours, without thought of measuring his or her compensation in terms of a given sum of money per hour. A teacher's duties and obligations to students and the community are not satisfied by closing the classroom door at the conclusion of a class. The direction and supervision of extracurricular activities are an important part of his duties. All of his duties are taken into consideration in his contract for employment at the annual salary. All of this is, of course, subject to the test of reasonableness. It does not appear that six of these athletic assignments in an entire school year are unreasonable, nor that the hours of such assignments are unreasonable under the circumstances. What is reasonable

must necessarily depend upon the facts of the situation and the teachers are protected in that regard by the appropriate administrative and judicial procedure. Supervising the students and being present to protect their welfare at school athletic and social activities, conducted under the name and auspices of the school, is within the scope of the contract and such assignments are proper so long as they are distributed impartially, they are reasonable in number and hours of duty and each teacher has his share of such duty.

In view of the foregoing we are convinced that the court correctly determined that respondent school board had "the right to assign Plaintiff to assist in the supervision of any and all athletic or social activities, wherever held, when conducted under the name or auspices of the Sacramento Senior High School, or any class or organization thereof, provided such assignment is made impartially and without discrimination against Plaintiff with relation to the other teachers employed at said Sacramento Senior High School." It must be borne in mind that the respondent school authorities are entrusted with the responsibility of administering the affairs of the school district and that as stated in *Bates* v. *Board of Education,* 139 Cal. 145, at page 148 [72 P. 907]:

"The public schools were not created, nor are they supported, for the benefit of the teachers therein, as implied by the contention of the appellant, but for the benefit of the pupils and the resulting benefit to their parents and the community at large."

And as stated in *Knickerbocker* v. *Redlands High School Dist.,* 49 Cal.App.2d 722, at page 727 [122 P.2d 289]:

"The whole system of legislation regulating the educational machinery is based upon the consideration of the welfare and best interests of the children. The proper regulation of tenure in office and other rights of teachers were also properly considered and regulated, but the fundamental purpose and primary object of the legislature was the consideration of the welfare of the children. This fundamental purpose must not be lost sight of by courts in the construction of legislation dealing with our educational system."

We believe that respondent school authorities had the right under the law and the contract with appellant to assign appellant to attend and assist in supervising these athletic contests. We believe that the presence of teachers at such contests should be helpful not only to the students but should be of benefit to the teachers themselves. We believe that

the school authorities had the right to determine that such duties should be performed by the teachers assigned thereto. As stated by the learned trial judge in his memorandum opinion, "Have the parents not the right to expect, and, indeed, to demand, that all such school activities be under the supervision of the school authorities? If not, then who is to be in control? The answers to these questions seem obvious."

We find nothing unreasonable in the assignments objected to by appellant. We must presume that the school authorities were acting for what they considered the best interest of the students and the people of the district. To quote again from *Parrish* v. *Moss, supra*: "Our courts have repeatedly enunciated the principle that they will not lightly interfere with the exercise of the function entrusted by law to the school authorities."

The judgment is affirmed.

Van Dyke, P. J., concurred. Peek, J., concurred in the judgment.