DISTRICT 300 EDUCATION ASSOCIATION *et al.*, Plaintiffs-Appellants, *v.* BOARD OF EDUCATION OF DUNDEE COMMUNITY UNIT SCHOOL DISTRICT NO. 300 OF KANE, McHENRY, De KALB AND COOK COUNTIES *et al.*, Defendants-Appellees.

(No. 74-159;

Second District (2nd Division)—August 25, 1975.

R. W. Deffenbaugh, of Drach, Terrell & Deffenbaugh, of Springfield, for appellants.

Allen D. Schwartz, of Robbins, Schwartz, Nicholas & Lifton, of Chicago, for appellees.

Mr. PRESIDING JUSTICE RECHENMACHER delivered the opinion of the court:

This is an appeal from an order of the circuit court of Kane County dismissing a complaint for declaratory judgment and for injunctive relief, brought by a group of school teachers against the Dundee Community School District.

The defendants after making detailed answers to the complaint, moved to strike certain paragraphs thereof, including paragraphs 13 to 21, inclusive, set out below, paragraph 9, hereafter referred to, and the paragraph justifying the cause as a class action. After considering the issues raised by the pleadings the trial court struck these paragraphs and then on motion of the defendants dismissed the complaint as not stating a cause of action. The court did not specifically rule on the propriety of the suit as a class action but stated in his memorandum opinion that the decision on the merits of the allegations as to unreasonable assignments disposed of the case on its merits, rendering the class action question moot. That issue is not raised in the plaintiffs' brief and we do not consider it here.

The complaint comprises some 25 paragraphs in addition to the prayer for relief. However, the gravamen of the complaint is that the plaintiffs, while employed as teachers of specific academic subjects, were assigned various nonteaching duties requiring their presence for supervision of certain nonacademic school activities, such as football and basketball games, pep rallies and music programs, which took place on Saturdays or weekday evenings. These assignments were compensated at a rate of pay lower than their contract pay as teachers. The plaintiffs contend these assignments are in violation of the School Code (Ill. Rev. Stat. 1973, ch. 122) and they seek a declaration from the court so stating and injunctive relief requiring the school board to refrain from making such assignments to teachers.

Paragraphs 13 through 21 of the complaint set forth the assignments complained of which are the basis of the suit and which may be summarized as follows:

13. An industrial arts teacher was assigned to ride a "Pep" bus on a Saturday.

14. A mathematics teacher was assigned to supervise an afternoon

football game on a Saturday and a football game on a Friday evening (not consecutive).

15. An English teacher was assigned to "two supervisions as needed."

16. A mathematics teacher was assigned to supervise wrestling matches on two different Saturdays.

17. A guidance counselor was assigned to supervise a "vocal" on a Friday evening and a "vocal program" on a Thursday evening.

18. A mathematics teacher was assigned to supervise a football game and dance on a Friday evening.

19. A biology teacher was assigned to supervise a football game on a Friday night and a basketball game on a Saturday night.

20. A social science teacher was assigned to supervise a football game on a Friday night and a basketball game on a Friday night.

21. A biology teacher and a German teacher were assigned to supervise a basketball game on a Friday night.

The plaintiffs contend these assignments are in violation of the School Code. However, the only specific provision of that statute they invoke as to teacher assignments is a paragraph in section 24—2 (Ill. Rev. Stat. 1973, ch. 122, par. 24—2) reading as follows:

"Holidays. A teacher shall not be required to teach on Saturdays or legal school holidays, which are January 1, February 12, Good Friday, May 30, July 4, the first Monday in September, commonly called Labor Day, * * * and any day appointed by the President or Governor as a day of fast or thanksgiving."

This section, it will be noted, refers only to *teaching* at such times and is not concerned with the supervisory or chaperoning duties set out in the plaintiffs' complaint. The gist of the complaint is that such assignments as indicated above bear no reasonable relationship to the contractual duties imposed on the plaintiffs under their teaching contracts. The complaint also states the assignments complained of are "in conflict with the rules and regulations established by the Office of the Superintendent of Public Instruction that are set forth in 'Exhibit A'." However, Exhibit A is merely a copy of a memorandum of the Superintendent of Public Instruction authorizing school administrators to make use of noncertified personnel, commonly referred to as "Teacher Aides" when "under the immediate supervision of a teacher holding a valid certificate" or in two other instances, supervision of lunch rooms or as chaperones on a bus trip not connected with the academic program of the school. The only relevancy of this memorandum to the complaint seems to be in its reference to the possibility of using such teacher aides as chaperones on a bus for

a trip of nonacademic nature. In other words, if the school authorities had wished to do so they could, if such person was available, have assigned a teacher aide to chaperone the bus trip which in one instance a regular teacher was assigned to ride. The choice, of course, was clearly with the School Board under the memorandum set forth as an exhibit and it was not mandatory that they hire a teacher aide in any of the cases referred to.

■■ It appears, therefore, that there is no specific section or paragraph of chapter 122 of the Illinois Revised Statutes, commonly known as the School Code, which the plaintiffs can point to as having been violated by the school administration. But, the plaintiffs are relying on their interpretation of what is "reasonable" as an assignment for a teacher. Naturally, the courts have differed in their interpretation of what is "reasonable" in various similar situations. But, where a party bases his case on the unreasonableness of the other party's rule, conduct or regulation, the burden is on the party asserting the unreasonableness to prove it. Were the plaintiffs able to point to a case where similar assignments have been held to be unreasonable by an appellate court we would, of course, give earnest consideration to such decision but the plaintiffs cite no case where similar assignments to teachers were held to be unreasonable by the court's decision. The case of *Parrish v. Moss* (Sup. Ct. Kings County 1951), 200 misc. 375 106 N.Y.S. 2d 577, referred to in the plaintiffs' brief, no doubt for its language to the effect that teachers may not be required "to perform janitor service, police service (traffic duty), school bus driving service, etc." (106 N.Y.S. 2d 577, 585) contains besides the above-quoted language in its decision upholding the school authorities, the following (106 N.Y.S. 2d 577, 584): " 'The broad grant of authority to fix "duties" of teachers is not restricted to classroom instruction. Any teaching duty within the scope of the license held by a teacher may properly be imposed. The day in which the concept was held that teaching duty was limited to classroom instruction has long since passed. Children are being trained for citizenship and the inspiration and leadership in such training is the teacher. * * *' " Supervision at football or basketball games or at musical programs is certainly not to be equated with janitor or police service and we find the case of *Parrish v. Moss* on the whole rather an authority for the defendants than for the plaintiffs on the question of extracurricular duties.

The plaintiffs assert that the intention of the School Code to require other than teacher personnel for such assignments as these here objected to is to be found in the authority granted in section 10—22.34(a):

"To designate non-certificated persons of good character to serve

as supervisors, chaperones or sponsors, either on a voluntary or on a compensated basis, for school activities not connected with the academic program of the schools."

This language merely gives the school administrators the option to use such noncertificated personnel, if available, should they choose to do so on a particular occasion but does not *substitute* such personnel for the regular teaching staff. Both may be used if necessary, or the teachers alone or the noncertificated personnel may be used alone, in the appropriate situation. In any event, we cannot deduce from the above quoted language that teachers should *not* be used for such supervisory activities.

The assignments objected to do not appear to have been onerous in nature or unreasonably time consuming. They are not demeaning to the professional stature of the teacher and there is no evidence that such assignments were made in a discriminatory manner. We think the case of *McGrath v. Burkhard* (1955), 131 Cal. App. 2d 367, 280 P.2d 864, is persuasive as to the issues raised here. There a teacher in the Sacramento Senior High School objected to being assigned to supervise at athletic contests of the school and brought, as here, an action in declaratory judgment asking the court to declare that such nonclassroom work was not within his contract as a teacher because not set forth therein or in the rules and regulations of the Board of Education. In considering this contention the court said:

"While it is true that the rule requiring teachers to fulfil the athletic assignments is not expressly set forth in the printed booklet of rules and regulations of the Board of Education of the Sacramento City Unified School District, it is also true that none of the nonclassroom duties required of the teachers are set forth therein, and yet the teachers are fully aware of such duties as cafeteria assignments, variety shows, club sponsors and duties at commencements, etc. All of these duties are supervisory in nature and a minute detailing of them is quite unnecessary, notwithstanding appellant's contention that they should be specifically set forth. These duties are so interrelated with the other duties of the teacher and his position that it is not necessary that each one of them be specifically stated. (131 Cal.App.2d 367, 373, 280 P.2d 864, 868.)

In this same vein an excerpt quoted by the appellate court in *McGrath v. Burkhard* from the trial court's memorandum opinion seems appropriate regarding such assignments to teachers:

" 'Have the parents not the right to expect, and, indeed, to demand, that all such school activities be under the supervision of the school authorities? If not, then who is to be in control? The answers to

these questions seem obvious.'" 131 Cal. App. 2d 367, 378, 280 P.2d 864, 871.

We are of the opinion that the assignments objected to are reasonably related to the teaching duties of the plaintiffs and are not required to be set forth in writing. As stated in the *McGrath* opinion above referred to:

"* * * [T]he general rule is, as stated in 24 Ruling Case Law, at page 574:

'There is no necessity that all the rules, orders and regulations for the discipline, government and management of the schools shall be made a matter of record by the school board, or that every act, order or direction affecting the conduct of such schools shall be authorized or confirmed by a formal vote.'" 131 Cal. App.2d 367, 373, 280 P.2d 864, 868.

The duties assigned to the plaintiffs were necessary adjuncts to normal school activities and were neither demeaning in character nor unreasonably burdensome. We think they were within the discretion of the school authorities to require as part of the teachers' duties. In view of our disposition of this case it appears unnecessary to pass upon the merits of the appellees' motion to strike the appellants' reply brief which was taken with the case.

The judgment of the trial court is hereby affirmed.

Judgment affirmed.

T. MORAN and DIXON, JJ., concur.