Filed 6/14/23  A.P. v. Orange Unified School District CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| A.P., | |
| Plaintiff and Appellant, | G061499 |
| v. | (Super. Ct. No. 30-2019-01120706) |
| ORANGE UNIFIED SCHOOL DISTRICT, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed in part, reversed in part, and remanded.

Rizio Lipinsky Law Firm, Gregory G. Rizio, Lynn P. Whitlock; Jason Flores Law and Jason Flores for Plaintiff and Appellant.

Hylton & Associates, Courtney L. Hylton and Ladan Shelechi for Defendant and Respondent.

A high school teacher became sexually involved with a student; he was fired when the relationship became public.  The student sued the school district for negligence in hiring, training, supervising, and retaining the teacher.  The trial court granted the school district's motion for summary judgment.  We deem the summary judgment order to be an order for summary adjudication of all causes of action; we reverse summary adjudication of the first cause of action and remand the matter for further proceedings but affirm summary adjudication of the remaining causes of action.  The trial court also denied the student's motion for production of further documents relating to the teacher; we affirm that order.

STATEMENT OF FACTS

Villa Park High School, Orange High School, and El Modena High School are all within the Orange Unified School District (the District).  Eddie Tran was a teacher at Orange High School.  Before being hired by the District, Tran provided references and was fingerprinted.

Teachers working for the District receive training every year at which they are instructed a personal relationship between a teacher and student is prohibited under the District's non-fraternization policy (the Policy).  Tran was aware of the Policy, which provides:  "The relationship between the school employee and the student should be one of professional cooperation and respect.  All employees, whether certificated or classified, have a responsibility to conduct themselves in a manner that will maintain an atmosphere that is conducive to learning.  [¶] It is the policy of the Board of Education to prohibit any type of close personal relationship between a school employee and a student that may be reasonably perceived as unprofessional, such as excessive personal attention outside of school, or dating.  School employees shall not entertain students, socialize with students, or spend an excess amount of time with students in such a manner as to reasonably create the impression to other students, their parents, or the public that a

2

dating relationship exists. [¶] It is also the policy of the Board of Education to prohibit any type of sexual relationship, sexual contact or sexually-nuanced behavior between a school employee and an enrolled student. This includes internet chat rooms, social network services, cell phones, and all other forms of electronic communication. This prohibition applies to students of the same or opposite sex as the school employee. It also applies regardless of whether the student or the school employee initiated the sexual behavior and whether or not the student welcomes the sexual behavior and/or reciprocates the attention. [¶] The District shall promptly investigate all reasonable allegations of prohibited staff/student relationships. The District shall utilize the investigation procedures followed for complaints of sexual harassment within the District, as referenced below."

During the 2018-2019 school year, A.P. was a senior at Villa Park High School. A.P. enrolled in a year-long emergency medical technician (EMT) class taught by Tran at El Modena High School. During the second semester, A.P. and Tran became romantically and sexually involved. Tran admitted his relationship with A.P. violated the Policy.

Sometime in 2019, A.P. and Tran started communicating via the Remind app, a two-way text-based communication platform allowing teachers to communicate directly with students and families. Although the app is designed to be used for school purposes, A.P. and Tran's communications became personal. They received at least one automatic warning from the app for use of inappropriate language. The District did not administer the Remind app, and had no way of monitoring conversations conducted with it. The District had decided not to purchase the upgraded Remind app in 2018, even after being told by the Remind marketing department that 40 percent of teachers were already using the free version of the app. The upgraded app would archive all messages and provide "complete visibility for administrators." In March 2019, A.P. and Tran began texting each other using their own cellphones.

3

In February or March 2019, A.P. broke up with her boyfriend, Jacob Maag. After the break up, Maag told Michael Lee, a Villa Park High School assistant principal, A.P. was spending time after school with a teacher, and Maag thought the relationship was inappropriate, was not professional, and was not "very like student-teacher." Maag told Lee A.P. was regularly alone with the teacher in his classroom from 4:00 or 5:00 p.m. to 9:00 p.m. Maag asked Lee whether it was strange for A.P. to help a teacher grade papers and do work for the teacher. Maag did not tell Lee he suspected A.P. and the teacher were dating or in a romantic or sexual relationship. Based on what Maag told him, Lee had "[n]o concern at all" about a violation of the Policy at that time.

Lee contacted El Modena High School principal Jill Katevas to help identify the teacher in question. Katevas testified she believed assistant principal Susan Hemans talked to Lee, and then Hemans talked to Katevas; Katevas did not initially speak directly to Lee. Katevas understood Lee was worried A.P. was doing the teacher's work for him and that A.P. and the teacher had a "potential[ly] inappropriate relationship."

Katevas met with Tran on March 7. (There is no indication in the appellate record when or how Tran was identified as the teacher in question.) Tran admitted to Katevas he had been alone with students in his classroom before or after class. Tran denied ever being with a student in a social situation off-campus. Katevas felt all of her questions had been answered and all of her concerns alleviated. Lee called Katevas during the interview and asked her to remind Tran not to be alone in a classroom with a student. Tran stated it would not happen again and he would no longer allow the student to grade his papers. Katevas did not know who the student in question was and did not ask Tran to identify her. Lee told Katevas he had asked the female student about the situation, and the student denied anything improper had occurred between her and Tran.

Within a day or two after her meeting with Tran, Katevas had a conversation with Dennis McCuistion, the principal of Orange High School and Tran's

4

supervisor, in which Katevas summarized her conversation with Tran. McCuistion recalled that Katevas expressed concern about Tran being alone with a student in a classroom but not about any allegation of misconduct other than poor judgment. No information was provided causing McCuistion to believe there was any inappropriate behavior violating the Policy; there was no "red flag." McCuistion believed he had a discussion with Tran about letting students out of class on time and not being alone with a student in a classroom.

On March 13, Orange High School vice-principal Sheryl Anderson-Glass saw A.P. on the Orange High School campus and asked why she was there. (Anderson-Glass had been the assistant principal at Villa Park High School and knew A.P.) A.P. replied she was there for Tran's EMT class. Anderson-Glass told A.P. to return to her own campus and also told Tran separately he should not have students from other schools visiting him. Seeing A.P. on the Orange High School campus did not cause Anderson-Glass to be concerned about an inappropriate personal relationship between A.P. and Tran.

A.P. and Tran began dating in March 2019.[1] In March and April, they saw each other at least three times a week outside of class. A.P. never told any teacher or school administrator she was dating Tran. The two engaged in sexual intercourse three or four times, beginning sometime in late March, always at Tran's house.

On May 3, A.P.'s mother contacted Anderson-Glass asking for assistance because A.P. had stopped taking her medication and attending school, and the mother believed her daughter was in a relationship with a teacher. She sent copies of text

---

[1] At the time the romantic/physical relationship began, A.P. was 19 years old. Therefore, no crime was committed. However, although the District's appellate brief emphasizes A.P.'s age and suggests the District owed no duty to protect A.P. from Tran because she was a consenting adult at the time, she was still a student and the District was thus subject to its basic duty to protect its students.

5

messages between A.P. and Tran to Anderson-Glass, causing Anderson-Glass to realize there was a problem. Anderson-Glass showed the text messages to McCuistion. McCuistion immediately alerted Assistant Superintendent of Human Resources Ed Kissee and placed Tran on administrative leave. McCuistion conducted the investigation, interviewed Tran, and provided a report of his findings to the District's Human Resources Department concluding Tran had violated the Policy.

Before May 2019, Tran had never been disciplined by the District. Tran's employment was involuntarily terminated by the District in June 2019. The relationship between A.P. and Tran ended in May 2019.

PROCEDURAL HISTORY

In December 2019, A.P. sued the District for negligence, breach of mandatory duty, violation of Title IX (20 U.S.C. § 1681 et seq.), and "Violation of California law." The District filed a motion for summary judgment and/or adjudication in October 2021. In November, A.P. filed a motion to compel the District to provide further responses to document requests. The trial court denied the motion as to six of the eight categories of documents for which A.P. sought further responses, and granted the motion with limiting language as to the other two categories.

The trial court continued the hearing on the motion for summary judgment to allow further discovery to be conducted. In May 2022, the parties submitted supplemental briefing on the motion for summary judgment.

The trial court granted the motion for summary judgment and entered judgment.[2] A.P. timely filed a notice of appeal.

---

[2] We deem the order granting summary judgment to be an order granting summary adjudication of all causes of action. (See *Gomez v. Lincare, Inc.* (2009) 173 Cal.App.4th 508, 511.)

6

DISCUSSION

I.

MOTION FOR SUMMARY JUDGMENT AND/OR SUMMARY ADJUDICATION

A.  Standard of Review

In an appeal from an order granting a motion for summary judgment or summary adjudication, "'"[w]e review the trial court's decision de novo, considering all the evidence set forth in the moving and opposing papers except that to which objections were made and sustained.'"  [Citation.]  We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party.  [Citation.]'  [Citation.]"  (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.)

"'Summary judgment should be granted if no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law.  [Citation.]  The burden of persuasion is on the party moving for summary judgment.  When the defendant is the moving party, the defendant must show the action has no merit.  That showing is made if the defendant either negates an element of the plaintiff's cause of action or establishes that a complete defense exists.  The burden then shifts to the plaintiff to show that a triable issue of material fact exists with respect to the cause of action or defense.'  [Citation.]"  (*Hester v. Public Storage* (2020) 49 Cal.App.5th 668, 674; see *Doe v. Lawndale Elementary School Dist.* (2021) 72 Cal.App.5th 113, 123-124 [same process applied to summary adjudication].)

B.  First Cause of Action – Violation of Government Code section 815.2 – Vicarious Liability of Public Entity for Negligent Hiring, Training, Retention, and/or Supervision

A.P.'s first cause of action alleges the District was liable for negligently hiring, training, retaining, and/or supervising Tran, pursuant to Government Code section

7

815.2.[3] Negligence requires proof the "defendant had a duty to use due care, that he breached that duty, and that the breach was the proximate or legal cause of the resulting injury. [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 292.)

The first matter to be considered is whether a duty exists between defendant and plaintiff. The existence of a duty is a legal question determined by the court. (*Bily v. Arthur Young & Co.* (1992) 3 Cal.4th 370, 397.)[4] As a general rule, a person is only liable for injury caused by "his or her want of ordinary care." (Civ. Code, § 1714.) A person is not liable in tort for failing to prevent an injury to another unless that person caused the peril. (*Brown v. USA Taekwondo* (2021) 11 Cal.5th 204, 214.)

A person may have an affirmative duty to protect another with whom he or she is in a special relationship, as determined by a two-part analysis. (*Brown v. USA Taekwondo, supra*, 11 Cal.5th at p. 215.) "[A] school district and its employees have a special relationship with the district's pupils, a relationship arising from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel . . . . Because of this special relationship, imposing obligations beyond what each person generally owes others under Civil Code section 1714, the duty of care owed by school personnel includes the duty to use reasonable measures to protect students from foreseeable injury at the hands of third parties acting negligently or intentionally." (*C.A. v. William S. Hart Union High School Dist.* (2012) 53 Cal.4th 861, 870.) "[A] school district cannot be held *vicariously* liable for a teacher's sexual

---

[3] "A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative." (Gov. Code, § 815.2, subd. (a).)

[4] Once it is determined the defendant owed the duty to the plaintiff, "'the remaining liability questions—breach as well as factual and legal causation—are usually questions for the jury.' [Citations.]" (*Doe v. Lawndale Elementary School Dist., supra*, 72 Cal.App.5th at p. 126.)

misbehavior with a student. . . . The only way a school district may be held liable must be 'premised on its own direct negligence in hiring and supervising the teacher.' [Citations.]" (*Steven F. v. Anaheim Union High School Dist.* (2003) 112 Cal.App.4th 904, 908-909; see *John R. v. Oakland Unified School Dist.* (1989) 48 Cal.3d 438, 452.)[5]

After the court determines there is a special relationship between the parties, it must determine "whether relevant policy considerations counsel limiting that duty" by consulting the *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*) factors. (*Brown v. USA Taekwondo, supra*, 11 Cal.5th at p. 209.) These factors are "'"'"the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.'"'"' (*Doe v. Lawndale Elementary School Dist., supra*, 72 Cal.App.5th at p. 127.) The purpose of considering these factors is not to determine "'"'whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy.'" [Citations.]" (*Ibid.*)

In this case, the trial court did not analyze the *Rowland* factors before determining the scope of the District's duty. The trial court therefore erred. The *Rowland* factors are primarily fact-based and connected to the case at hand. Therefore, the interests of justice require that, rather than attempting to make a determination about

_____

[5] During oral argument, counsel clarified A.P. is alleging negligent retention and supervision, not negligent hiring as to this cause of action. Therefore, we focus our discussion on the negligent retention and supervision of Tran.

9

the *Rowland* factors ourselves, we remand this matter to the trial court to allow it to determine whether some or all of the factors exist and whether they weigh in favor of limiting the District's duty to A.P.

Additionally, the trial court relied on *Doe v. Anderson Union High School Dist.* (2022) 78 Cal.App.5th 236 regarding the District's duty to invest in the upgraded Remind app. After the trial court issued its minute order granting summary judgment, the California Supreme Court granted review of *Doe v. Anderson Union High School Dist.* on its own motion, depublished the opinion, and transferred the case back to the Court of Appeal to reconsider the matter in light of *Brown v. USA Taekwondo, supra*, 11 Cal.5th 204. (*Doe v. Anderson Union High School Dist.* (Aug. 17, 2022, S275336).) On remand, the trial court will be allowed to consider any relevant authorities with respect to this issue.

C. Second Cause of Action – Violation of Government Code section 815.6 – Breach of Mandatory Duty

A.P.'s second cause of action alleges the District breached a mandatory duty owed to her to protect her "from the reasonably foreseeable harm of being sexually exploited by" Tran, pursuant to Government Code section 815.6.[6] A.P. claims Education

---

[6] "Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect against the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty." (Gov. Code, § 815.6.)

10

Code section 44807[7] and California Code of Regulations, title 5, section 5552,[8] create a statutory duty, which the District breached.

In *Virginia G. v. ABC Unified School Dist.* (1993) 15 Cal.App.4th 1848, 1851, the minor sued after being sexually molested by a teacher. The trial court granted a motion for judgment on the pleadings on the ground the minor could not plead the existence of a mandatory duty by the school district under Government Code section 815.6. (*Virginia G. v. ABC Unified School District, supra*, 15 Cal.App.4th at pp. 1854-1855 & fn. 1.) The appellate court agreed, but reversed the judgment because the minor might have been able to plead a cause of action for negligent hiring or supervision. (*Id.* at p. 1856.) The court specifically noted the minor could not state a cause of action for breach of a mandatory duty arising out of Education Code section 44807. "Section 44807 has to do with supervision of pupils, not teachers. It provides that public school teachers 'shall hold pupils to a strict account for *their* conduct on the way to and from school, on the playgrounds, or during recess,' and absolves teachers and supervisory personnel from civil and criminal liability for exerting reasonably necessary physical control over pupils in order to 'maintain order, protect property, or protect the

---

[7] "Every teacher in the public schools shall hold pupils to a strict account for their conduct on the way to and from school, on the playgrounds, or during recess. A teacher, vice principal, principal, or any other certificated employee of a school district, shall not be subject to criminal prosecution or criminal penalties for the exercise, during the performance of his duties, of the same degree of physical control over a pupil that a parent would be legally privileged to exercise but which in no event shall exceed the amount of physical control reasonably necessary to maintain order, protect property, or protect the health and safety of pupils, or to maintain proper and appropriate conditions conducive to learning. The provisions of this section are in addition to and do not supersede the provisions of Section 49000." (Ed. Code, § 44807.)

[8] "Where playground supervision is not otherwise provided, the principal of each school shall provide for the supervision by certificated employees of the conduct and safety, and for the direction of the play, of the pupils of the school who are on the school grounds during recess and other intermissions and before and after school." (5 Cal. Code Regs., tit. 5, § 5552.)

11

health and safety of pupils, or to maintain proper and appropriate conditions conducive to learning.' (Italics added.) Section 44807 does not provide a basis for application of Government Code section 815.6." (*Virginia G. v. ABC Unified School Dist., supra*, 15 Cal.App.4th at p. 1855, fn. 1.)

A.P. cites several cases she claims recognize Education Code section 44807 and California Code of Regulations, title 5, section 5552 impose mandatory duties in cases similar to the present one. *McGrath v. Burkhard* (1955) 131 Cal.App.2d 367, 372 addressed whether teachers must take on supervisory duties at football and basketball games. *M.W. v. Panama Buena Vista Union School Dist.* (2003) 110 Cal.App.4th 508, 517-518 involved the failure to supervise students on school grounds before school. *Dailey v. Los Angeles Unified School District* (1970) 2 Cal.3d 741, 747-748 involved the failure to supervise students on the school's athletic field and in the area around the gym during lunch break. *J.K. by and through guardian ad litem Jennifer X. v. Gold Trail Union School District* (E.D.Cal. Sept. 30, 2021) 2021 U.S.Dist. Lexis 189303 addressed the school's duty to supervise students' conduct on school grounds. Finally, in *Burke v. Basil* (C.D.Cal. June 21, 2021) 2021 U.S.Dist. Lexis 177522, students were injured off school property; the district court denied the motion for summary judgment of a claim alleging a violation of Education Code section 44807. None of these cases presents facts similar to ours, and none gives us any reason to expand the law to say Education Code section 44807 creates a mandatory duty here. The Policy itself does not create a mandatory duty.

The trial court properly granted the motion for summary adjudication of the second cause of action.

D. Third Cause of Action – Violation of Title IX

A.P.'s third cause of action alleges the District violated Title IX[9] by failing to protect her from "the sexual abuse, exploitation, harassment and discrimination [that] was so severe, pervasive, and objectively offensive that it effectively prevented A.P. from deriving the same educational opportunity and benefit as other students, thus impairing and depriving A.P. [of] equal access to the educational benefits offered by" the District.

"[A] damages remedy will not lie under Title IX unless an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf has *actual knowledge* of discrimination in the recipient's programs and fails adequately to respond." (*Gebser v. Lago Vista Independent School Dist.* (1998) 524 U.S. 274, 290, italics added.)

The District established it had no actual knowledge of any sexual abuse of A.P. by Tran until May 3, 2019, immediately after which it took action.

A.P. contends the District had actual knowledge of the sexual abuse as early as February 22, 2019, when the Remind app messaged A.P. the system "is for school communication and that your administrator can access your message history. Please review Remind's Community Guidelines . . . which prohibit profanity, sexually-suggestive content, harassment, bullying, gossip, threats, and spam. You may lose the ability to message others if Remind discovers you violated guidelines," and no later than March 7, 2019, when Maag told Lee he believed A.P. and a teacher had "an inappropriate relationship" and Katevas met with Tran. Neither of these events, however, gave the District *actual knowledge* of Tran and A.P.'s sexual relationship. (Indeed, based on Tran and A.P.'s testimony, their sexual relationship had not even begun at either of those

---

[9] Title IX provides: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . . ." (20 U.S.C. § 1681.)

times.)  The District did not have access to messages sent via the Remind app.  And although Maag used the term "inappropriate relationship," his testimony was clear that he did not know Tran and A.P. were in a dating relationship, and he used that term only to mean that A.P.'s grading of papers did not seem like something a student should be doing for a teacher.

A.P. did not raise a triable issue of material fact as to the District's lack of actual knowledge of Tran's sexual abuse.  The trial court properly granted the motion for summary adjudication of the third cause of action.


E.  Fourth Cause of Action – Violation of California Law

The fourth cause of action in A.P.'s complaint alleges the District violated "various California statutes that impose on public schools in California an affirmative duty to protect public school students from discrimination and harassment engendered by race, gender, sexual orientation or disability" including, but not limited to Government Code section 11135, and Education Code sections 200, 201, 212.5, 220, 221.5, 231.5, 32261, 32280, 32281, and 32282.

The trial court found this cause of action was "a catch-all" of the other causes of action, and the District had made its prima facie showing that none of the cited statutes imposed liability on it.  Both in the trial court and on appeal, A.P. stated:  "[A]t the very least, there is a violation of Education Code section 44807, and 5 CCR section 5552 sufficient to support a negligence per se claim."  As with the mandatory duty cause of action, this cause of action fails.  Summary adjudication of this cause of action was proper.

14

## II.

### DISCOVERY MOTION

The trial court granted in part and denied in part A.P.'s motion to compel further responses to A.P.'s second demand for production of documents. The categories of documents sought by A.P. as to which the motion to compel was denied were: (1) communications between or among the District's employees relating to Tran and A.P. (request No. 50); (2) communications between or among the District's employees relating to concerns, complaints, inquiries, investigations, or interviews about Tran (request No. 51); (3) communications between the District and Tran (request No. 54); (4) Tran's personnel file (request No. 56); (5) documents relating to Tran's personnel records (request No. 57); (6) documents relating to counseling or disciplinary action taken by the District with respect to Tran other than those relating to student interactions or responsibility (request No. 59).

We review the trial court's discovery order for abuse of discretion. (*Manuel v. Superior Court* (2022) 82 Cal.App.5th 719, 727.) The California Supreme Court has made clear an important related caveat: "[T]rial courts issuing discovery orders and appellate courts reviewing those orders should do so with the prodiscovery policies of the statutory scheme firmly in mind. A trial court must be mindful of the Legislature's preference for discovery over trial by surprise, must construe the facts before it liberally in favor of discovery, may not use its discretion to extend the limits on discovery beyond those authorized by the Legislature, and should prefer partial to outright denials of discovery. [Citation.] A reviewing court may not use the abuse of discretion standard to shield discovery orders that fall short: 'Any record which indicates a failure to give adequate consideration to these concepts is subject to the attack of abuse of discretion, regardless of the fact that the order shows no such abuse on its face.' [Citations.]" (*Williams v. Superior Court* (2017) 3 Cal.5th 531, 540 (*Williams*).)

15

The District asserted a privacy objection on behalf of third party Tran with respect to the categories of documents at issue. "The party asserting a privacy right must establish a legally protected privacy interest, an objectively reasonable expectation of privacy in the given circumstances, and a threatened intrusion that is serious. [Citation.] The party seeking information may raise in response whatever legitimate and important countervailing interests disclosure serves, while the party seeking protection may identify feasible alternatives that serve the same interests or protective measures that would diminish the loss of privacy. A court must then balance these competing considerations. [Citation.]" (*Williams, supra*, 3 Cal.5th at p. 552.) The party asserting a privacy interest bears the burden of establishing the privacy interest's extent and the seriousness of its prospective invasion. (*Id.* at p. 557.)

Confidential personnel records at one's place of employment are within a zone of privacy. (*Board of Trustees v. Superior Court* (1981) 119 Cal.App.3d 516, 528-530.) Such records may only be compelled to be produced if they are directly relevant, not merely that they may lead to relevant information. (*Id.* at p. 525.) "[E]ven when discovery of private information is found directly relevant to the issues of ongoing litigation, it will not be automatically allowed; there must then be a 'careful balancing' of the 'compelling public need' for discovery against the 'fundamental right of privacy.' [Citations.]" (*Ibid.*)

The District met the initial showing required by *Williams*; Tran has a legally protected privacy interest in his personnel files and an objectively reasonable expectation of privacy, and the disclosure of the entirety of those files would be a serious intrusion.

The burden then shifted to A.P. to establish her need for the documents and their direct relevance. A.P. contended the documents were "directly relevant to the issues of negligent hiring, training, retention and supervision" and she needed the documents to respond to the motion for summary judgment. As explained in detail *ante*, the issues of

16

when the District should have had notice of Tran's sexual and/or dating relationship with A.P. and whether the District was negligent in its supervision of Tran are key to the merits of the motion for summary judgment.

The trial court found A.P. had "not shown good cause for the breadth of the documents sought in nos. 50, 51, 54, 56, and 57," and therefore denied the motion as to those requests. The court further found A.P. had established a compelling need for the documents sought in request No. 59, but only as to documents "relat[ing] to student interactions or responsibility."

A.P.'s requests were not narrowly tailored and sought documents not directly relevant to the issues presented by the summary judgment motion. A.P. did not request a more narrow set of documents and did not identify for the trial court which documents were most relevant or most important to her ability to respond to the motion for summary judgment. Under these circumstances, we cannot say the trial court abused its broad discretion over this discovery matter.

*Lopez v. Watchtower Bible & Tract Society of New York, Inc.* (2016) 246 Cal.App.4th 566, on which A.P. relies, is unavailing. A bible study teacher was alleged to have sexually molested a minor *after* the defendant religious organization had notice the teacher had sexually molested another minor during a bible study class several years earlier. (*Id.* at pp. 573-574.) The complaint also alleged the teacher had molested other children after molesting the plaintiff and sought punitive damages based on the reprehensibility of the defendant religious organization's repeated failure to protect the children. (*Id.* at pp. 574-575, 592.) The issue of third party privacy rights involved the production of documents identifying other potential victims; the trial court's order to redact those documents solved the issue. (*Id.* at p. 598.) Further, the appellate court concluded the trial court did not err by ordering production of documents regarding further postincident acts of sexual abuse because those documents were relevant to both

17

liability and punitive damages.  (*Id.* at pp. 592-594.)  None of the documents sought was part of a private personnel file.

## DISPOSITION

The judgment is reversed.  The order granting the motion for summary judgment is deemed to be an order granting the alternative motion for summary adjudication of each of the causes of action.  The order granting the motion for summary adjudication of the first cause of action is reversed and the matter is remanded to the trial court for further proceedings consistent with this opinion.  The order granting the motion for summary adjudication of the second, third, and fourth causes of action is affirmed.  The discovery order is affirmed.  In the interests of justice, because each party prevailed in part, neither party shall recover costs on appeal.


MOTOIKE, J.

WE CONCUR:


SANCHEZ, ACTING P. J.


DELANEY, J.