[No. 1309-3.   Division Three.   June 28, 1976.]

GLORIA MCCOLLOUGH, ET AL, *Appellants,* V. CASHMERE SCHOOL DISTRICT No. 222, *Respondent.*

*James R. Blinn, Jr., George Mack,* and *Robert Mullendore,* for appellants.

*Edward E. Level,* for respondent.

McINTURFF, C.J.—This case concerns teachers' contract renewal rights in the event of disagreement between the teachers and the school district over the number of hours that must be spent teaching extracurricular activities. The teachers appeal from a declaratory judgment which found that no employment contract existed between them and the Cashmere School District (District) for the 1974-75 school year.

Gloria McCullough and Mary Drussell had been employed as teachers by the District for 3 and 7 years respec-

tively. Mrs. McCollough was employed by the District as a girls' physical education teacher, and additionally had performed extracurricular duties which included a program of girls' athletic activities (GAA) for which she was compensated above her basic salary. She had also coached girls' track on an uncompensated volunteer basis. During the second and third years as track coach, Mrs. McCollough insisted she did not want to continue the extracurricular position of track coach on a permanent basis.

Mary Drussell had been employed by the District as a girls' physical education teacher and, for additional compensation, had coached girls' gymnastics as an extracurricular duty.

Neither teacher received notice prior to April 15, 1974, of intent by the District not to renew her employment contract for the next school year. However, on May 17, 1974, both teachers received their 1974-75 teaching contracts providing that they were to be retained in their same curricular positions, but with additional extracurricular duties for which additional compensation was provided. In place of her usual "GAA-3 trimesters" there was substituted in Mrs. McCollough's contract "interscholastic girls' track, interscholastic basketball." Mrs. Drussell's contract showed that she was to perform the extracurricular duty of gymnastics, but also "7th, 8th and 9th girls' basketball." The contract changes were in apparent response to wishes of higher school officials to expand athletic opportunities for girls.

Mrs. McCollough estimates the change in her contract would increase her 140 paid extracurricular hours to 344 extracurricular hours, while the District estimates an increase to 316 hours. Mrs. Drussell would be increased from 124 to 180 extracurricular hours.

After unsuccessful negotiations with the District, both teachers deleted the additional extracurricular duties from the 1974-75 contracts, substituted the extracurricular duties as they existed from the 1973-74 contracts, and then signed and returned them to the District in this altered form. The teachers felt the additional duties would impair their pro-

fessional performance in other classes, and would unduly interfere with their private and family obligations. The District immediately rejected the altered contracts, and insisted the new contracts be accepted in original form within 15 days. When the teachers did not accept within this time limit, replacements were sought by the District.

The nub of this case is the teachers' argument that by assigning additional extracurricular duties, the District has placed an invalid condition on the exercise of the teachers' vested statutory right of reemployment guaranteed by the continuing contract law, RCW 28A.67.070. It provides in pertinent parts:

> Every board of directors determining that there is probable cause or causes that the employment contract of an employee should not be renewed by the district for the next ensuing term shall notify that employee in writing on or before April 15th preceding the commencement of such term of that determination of the board of directors, which notification shall specify the cause or causes for nonrenewal of contract. . . .
>
> . . . . If any such notification or opportunity for hearing is not timely given by the district, *the employee entitled thereto shall be conclusively presumed to have been reemployed by the district for the next ensuing term upon contractual terms identical with those which would have prevailed if his employment had actually been renewed by the board of directors for such ensuing term.*

(Italics ours.)

The continuing contract law was enacted to give presently employed teachers some modicum of job security by guaranteeing to them a preferential right in curricular positions, before considering new applicants for the same position.[1] If no teaching position is to be offered, the teacher must be notified by April 15. This preferential right does not extend to extracurricular duties, extracurricular duties being too far removed from the primary teaching

---

[1]*See Peters v. South Kitsap School Dist. 402*, 8 Wn. App. 809, 815, 509 P.2d 67 (1973).

function to warrant protection of the continuing contract law.[2]

After April 15, the teacher is "conclusively presumed to have been *reemployed* by the district for the next ensuing term upon contractual terms identical with those *which would have prevailed if his employment had actually been renewed* . . ." (Italics ours.) RCW 28A.67.070, that is, upon terms which the district offers in the *new* contract. The continuing contract law does not operate to renew *old* contracts in identical terms after April 15, but creates a preferential right in the teacher to available curricular positions for the following year. The continuing contract law guarantees an offer of reemployment, but not the exact contractual terms of the offer. To hold otherwise would be to inhibit the district's administrative responsibility to the public by creating in the teacher the right to teach a particular class or at a particular school within the district.[3] Of necessity, the district must be able to adapt to changes in enrollment, curriculum, available money, and other circumstances by changing teacher assignments.

However, there is within the continuing contract law the essential implication that every offer for reemployment, which includes curricular assignments, must be a reasonable offer.[4] A rule of reasonableness must be implied in the continuing contract law so that that law does not become a sword or subterfuge in the hands of the district, defeating the intent of the legislature to create job security. All parts of an offer for reemployment, curricular and extracurricular, must be within the education, professional preparation, and experience of the teacher. The offer may not be of such extended hours or other adverse conditions as to make the offer unreasonable and hence unacceptable. Nor may the offer be one which bears no reasonable rela-

---

[2]*Kirk v. Miller*, 83 Wn.2d 777, 780, 522 P.2d 843 (1974).

[3]*See Goodwin v. Bennett County High School Independent School Dist.*, 226 N.W.2d 166, 168 (S.D. 1975); *Redman v. Department of Educ.*, 519 P.2d 760, 766 (Alas. 1974).

[4]*Pease v. Millcreek Township School Dist.*, 412 Pa. 378, 195 A.2d 104, 107-08 (1963).

tion to a legitimate educational purpose. If a rule of reasonableness were not implied in the continuing contract law, that law would be a nullity by allowing arbitrary dismissal after April 15 through an unreasonable offer of reemployment.

Turning to the facts of the present case, Mrs. McCollough and Mrs. Drussell acquired preferential rights in curricular positions to be offered by the District when notice of nonrenewal was not received by April 15, 1974. That preferential right was honored when the District offered them two curricular girls' physical education teacher positions.

Further, the trial court found each offer, including both curricular and extracurricular assignments, to be reasonable, thus placing valid conditions upon vested reemployment rights. Mrs. McCollough and Mrs. Drussell were qualified by education, professional preparation, and experience to assume not only the curricular, but the extracurricular positions to which they were assigned in their new contracts. Reasonableness of the resulting increase in extracurricular hours is demonstrated by the fact that Mrs. McCollough would be 19th and Mrs. Drussell 23rd in the number of hours spent among the 30 teachers performing extracurricular duties in the 1974-75 school year.[5] Further, the offers do bear a reasonable relation to a legitimate educational purpose. The performance of extracurricular duties which serve to develop the character and aptitudes of students, here interscholastic sports, are an essential element in the modern educational process and a proper part of a teaching contract.[6] There being substantial evidence to sup-

---

[5] Nine teachers were assigned to extracurricular duties requiring over 600 hours each, while Mrs. McCollough would work 316 to 344 hours and Mrs. Drussell 180 hours.

Reasonableness of offered compensation is not contested.

[6] *Pease v. Millcreek Township School Dist.*, 412 Pa. 378, 195 A.2d 104 (1963) cites at pages 385-86 the case of *McGrath v. Burkhard*, 131 Cal. App. 2d 367, 280 P.2d 864, 870 (1955):

"A teacher's duties and obligations to students and the community are not satisfied by closing the classroom door at the conclusion of a class. The direction and supervision of extracurricular activities are an important part of his duties. All of his duties are taken into

port the finding of reasonableness, that finding will not be disturbed on appeal.

The District has fully complied with the requirements of the continuing contract law, and has placed only reasonable and valid conditions on reemployment rights.

We hold that teachers may be required to assume reasonable extracurricular duties as a condition of reemployment. The refusals by Mrs. McCollough and Mrs. Drussell to accept teaching contracts which included reasonable extracurricular duties constituted a rejection or abandonment of their reemployment right created by the continuing contract law. The District offered contracts containing additional extracurricular activities; the teachers counteroffered with contract additions deleted. Neither the offers nor counteroffers were accepted, thus creating no 1974-75 contracts between the parties. The District was free to replace the teachers.

Mrs. McCollough and Mrs. Drussell have argued in the alternative that their 1974-75 contracts each constituted two separate offers by the District, contemplating one acceptance by each teacher of offered curricular duties and a second acceptance of offered extracurricular duties. They argue that return of the 1974-75 contracts with alteration of extracurricular duties was acceptance of offered curricular duties and a counteroffer for extracurricular duties.[7] Whether an offer contemplates more than one acceptance depends upon the intent of the parties to be discovered by reading the document as a whole, together with surrounding facts and circumstances, if necessary.[8]

The trial court found that,

although the curricular and extracurricular assignments could have been handled by separate contracts, there is

consideration in his contract for employment in the annual salary. All of this is, of course, subject to the test of reasonableness."

See also *Parrish v. Moss*, 200 Misc. 375, 106 N.Y.S.2d 577, 584-85 (1951).

[7]*See* Restatement of Contracts § 30 (1932).

[8]*Berlin Machine Works v. Miller*, 59 Wash. 572, 576, 110 P. 422 (1910); *Stender v. Twin City Foods, Inc.*, 82 Wn.2d 250, 254, 510 P.2d 221 (1973), and cases cited therein.

no requirement that this be done; and it was the *intention* of the parties that the above-quoted sections of their contract apply to both the curricular subjects and the extracurricular activities.

(Italics ours.) Thus, the trial court impliedly found each contract to be an entirety, contemplating a single acceptance from each teacher of both offered curricular and extracurricular duties.[9] We agree. The District consistently refused employment to the teachers unless the objectionable extracurricular duties were accepted together with offered curricular duties. Actions by the teachers in returning the offered contracts in altered form likewise is consistent with their refusal of all employment with the District unless specific extracurricular duties were offered. We conclude there is substantial evidence that it was the intention of the parties to have a single acceptance to the contract; that it was not intended to be severable.

◼ Mrs. McCollough and Mrs. Drussell also claim promissory estoppel as an equitable bar to the addition of extracurricular duties to their 1974-75 contracts. They argue that the District's silence prior to April 15, 1974, as to contract additions, led them to justifiably believe their reemployment rights for the next school year were secure. For equitable estoppel to arise, there must be an admission, statement, or act inconsistent with the claim afterwards asserted.[10] We find no inconsistency to be implied from the District's silence until May 17. Throughout the time in question, the District has acted consistently with the requirements of the continuing contract law. Reasonable extracurricular duties could be included in the 1974-75 contracts without notice of such additions prior to April 15, 1974.

◼ Further error is assigned to the trial court's denial of the teachers' attorney fees. Statute provides for the discretionary award of attorney fees to an employee of a

[9]*Whatcom Builders Supply Co. v. H.D. Fowler, Inc.*, 1 Wn. App. 665, 667-68, 463 P.2d 232 (1969).

[10]*Kessinger v. Anderson*, 31 Wn.2d 157, 170, 196 P.2d 289 (1948); *Pacific Nat'l Bank v. Richmond*, 12 Wn. App. 592, 595, 530 P.2d 718 (1975).

school district adversely affected in his employment status by some action of the district.[11] Denial of fees to the teachers, the nonprevailing parties at trial, does not of itself show abuse of discretion, abuse of discretion being "discretion exercised upon grounds or to an extent clearly untenable or manifestly unreasonable."[12] But because the questions in this action have been appealed in good faith and will be of precedential value, we award the teachers' attorney fees on appeal.[13]

We have considered Mrs. McCollough's and Mrs. Drussell's remaining assignments of error and find them to be without merit.

The judgment of the Superior Court is affirmed and the cause remanded for fixing of the teachers' reasonable attorney fees on appeal.

GREEN and MUNSON, JJ., concur.

---

[11] RCW 28A.58.490; *Goodman v. Bethel School Dist. 403*, 84 Wn.2d 120, 128-30, 524 P.2d 918 (1975).

[12] *Gordon v. Gordon*, 44 Wn.2d 222, 227, 266 P.2d 786 (1954).

[13] *Goodman v. Bethel School Dist. 403*, 84 Wn.2d 120, 128, 524 P.2d 918 (1975); *Lines v. Yakima School Dist. 7*, 12 Wn. App. 939, 945, 533 P.2d 140 (1975); *Francisco v. Board of Directors*, 11 Wn. App. 763, 773, 525 P.2d 278 (1974).