Carolyn M. QUARLES, Plaintiff and Appellant,

v.

McKENZIE PUBLIC SCHOOL DISTRICT NO. 34, a Public Corporation, Defendant and Appellee.

Civ. No. 10173.

Supreme Court of North Dakota.

Oct. 20, 1982.

Daniel J. Chapman, of Chapman & Chapman, Bismarck, for plaintiff and appellant.

Dean F. Bard, Bismarck, for defendant and appellee.

VANDE WALLE, Justice.

Carolyn M. Quarles appealed from a judgment entered by the district court of Burleigh County dismissing her action for wrongful nonrenewal of her teaching contract against McKenzie Public School District No. 34 (hereinafter "school board"). We affirm.

Quarles was employed as a teacher in the school district during the 1980–1981 school year. She taught grades 5 through 8, in which 16 students were enrolled. Grades 1 through 4 were taught by another teacher and there were also 16 students enrolled in those four grades. In addition, a "Title I" teacher was employed for remedial purposes. Quarles also served as principal of the school. For the 1981–1982 school year the school district determined to restructure the system by adding one teacher to the staff. Grades 1 and 2, with ten pupils, were to be taught by one teacher; grades 3 through 5, with ten pupils enrolled, would be taught by a second teacher; and grades 6 through 8, with 11 pupils, were to be taught by Quarles. The principal's duties were to be assigned to the teacher for grades 3 through 5 in order to equalize the duties. Quarles received a salary of $11,925 for the 1980–1981 school year. She was offered a contract in the sum of $10,000 for the 1981–1982 school year. Following the offer of the contract Quarles questioned whether or not the school board had complied with Section 15–47–27, N.D.C.C.[1]

1. Section 15–47–27, N.D.C.C., reads in part:

"Any teacher who has been employed by any school district or the director of institutions in this state during any school year, shall be notified in writing by the school board or the director of institutions, as the case may be, not earlier than the fifteenth day of February and not later than the fif-

Subsequently, the school board issued a notice of contemplated nonrenewal. A hearing was held and the school board determined to not renew Quarles's contract. Quarles brought action against the school district alleging that her employment had been terminated contrary to law. The district court concluded that Quarles was not entitled to damages for wrongful failure to renew Quarles's contract because she had been offered a contract in accordance with Section 15–47–27, N.D.C.C.,[2] but did not accept it.

On appeal, Quarles contends that the district court erred in concluding that the action of the school board in offering Quarles a contract for the following school year at a significantly reduced amount from the current year did not constitute a failure to renew the contract as provided by Section 15–47–27, N.D.C.C.

The district court's decision was based upon this court's opinion in *Enstad v. N. Cent. of Barnes Pub. Sch., Etc.,* 268 N.W.2d 126 (N.D.1978). In *Enstad* the court construed Section 15–47–27 "to determine whether a teacher's reemployment rights under the section are complied with when a school board offers a contract containing reasonable changes of assignments." 268 N.W.2d at 131. After considering decisions involving similar issues from other jurisdictions the court concluded:

"We construe Section 15–47–27, N.D.C.C., to require that the school board's offer of reemployment cannot impose unreasonable terms, conditions, or changes in assignments from those in the teacher's current contract. However, this section does not grant a teacher the right to an offer of reemployment consisting of the identical contract as the teacher possesses during the current school term. This section does not divest the school board of its authority to make changes in assignments of classes or extracurricular duties in its role of operating and maintaining the school system. If the school board makes a reasonable, good faith offer of reemployment to the teacher, the teacher can choose to accept or reject such offer. If the teacher rejects the reasonable offer she has no further reemployment rights under Section 15–47–27, N.D.C.C. If the school board's offer of reemployment is unreasonable the teacher can reject such offer and, upon doing so, continue to have an enforceable right to reemployment against the school board under Section 15–47–27, N.D.C.C." 268 N.W.2d at 134.

In *Enstad* the teacher had been offered a contract of reemployment which required her to accept, in addition to the duties she had performed during the school year, the assignment of coaching girls' basketball. The teacher was qualified by education to coach basketball and this court held that such an offer was reasonable. The court in *Enstad* relied upon a decision of the South Dakota Supreme Court in *Collins v. Wakonda Ind. School Dist. No. 1,* 252 N.W.2d 646, 648 (S.D.1977), in which that court stated:

"By the Continuing Contract Law the legislature did not, however, intend to

teenth day of April in the school year in which he or she has been employed to teach, of the determination not to renew the teacher's contract for the ensuing school year, if such determination has been made; and failure to give such written notice on or before said date shall constitute an offer to renew the contract for the ensuing school year under the same terms and conditions as the contract for the then current year."

**2.** The pertinent part of Section 15–47–27 reads: "On or before April fifteenth in any year and not earlier than February fifteenth, all teachers shall be notified of a date, which shall not be less than thirty days after the date of such notice, upon which they will be required to accept or reject proffered reemployment, and failure on the part of the teacher to accept said offer within such time shall be deemed to be a rejection of the offer. Any teacher who shall have accepted the offer of reemployment, either by the action or non-action of the school board or the director of institutions, [on] or before April fifteenth, as herein provided, shall be entitled to the usual written contract for the ensuing school year, as provided by law and shall notify the school board or the director of institutions in writing of his or her acceptance or rejection on or before the date specified or before May fifteenth, whichever is earlier."

grant the teacher a vested right to a specific school or to a specific class level of students within any school, in the district. The school board must be able to adapt to changes in enrollment, curriculum, available money, and other circumstances in determining the re-employment contract which is to be offered." [Footnote omitted.]

In *Collins* the teacher had taught fourth grade for 18 years but was offered a contract to teach seventh and eighth grades. The court determined the teacher was qualified to teach those grades and held that the action of the school board was reasonable.

The court in *Enstad* also relied upon decisions in Washington. In *McCullough v. Cashmere Sch. Dist. 222 of Chelan Cty.,* 15 Wash.App. 730, 551 P.2d 1046 (1976), the Washington Court of Appeals stated:

"The continuing contract law does not operate to renew *old* contracts in identical terms after April 15, but creates a preferential right in the teacher to available curricular positions for the following year. The continuing contract law guarantees an offer of reemployment, but not the exact contractual terms of the offer. To hold otherwise would be to inhibit the district's administrative responsibility to the public by creating in the teacher the right to teach a particular class or at a particular school within the district. Of necessity, the district must be able to adapt to changes in enrollment, curriculum, available money, and other circumstances by changing teacher assignments.

"However, there is within the continuing contract law the essential implication that every offer for reemployment, which includes curricular assignments, must be a reasonable offer. A rule of reasonableness must be implied in the continuing contract law so that that law does not become a sword or subterfuge in the hands of the district, defeating the intent of the legislature to create job security. All parts of an offer for reemployment, curricular and extracurricular, must be within the education, professional preparation, and experience of the teacher.

The offer may not be of such extended hours or other adverse conditions as to make the offer unreasonable and hence unacceptable. Nor may the offer be one which bears no reasonable relation to a legitimate educational purpose. If a rule of reasonableness were not implied in the continuing contract law, that law would be a nullity by allowing arbitrary dismissal after April 15 through an unreasonable offer of reemployment." [Footnotes omitted.] 551 P.2d at 1049–1050.

In *McCullough* the offer made to the teachers by the school district included increased extracurricular duties with a corresponding increase in pay. However, in *Barnes v. Seattle Sch. Dist. No. 1,* 88 Wash.2d 483, 563 P.2d 199 (1977), the Washington Supreme Court stated:

"The language of the nonrenewal statute clearly contemplates that an immediate statutory right vests in certificated personnel to demand contracts containing substantially identical terms and conditions upon failure of the district to give timely notice of nonrenewal. The statute clearly does not contemplate the offer of new and different contracts such as were here presented to the respondents. Our interpretation of the statute requires that language to the contrary contained in the opinion of the Court of Appeals in *McCullough v. Cashmere School Dist. 222,* 15 Wash.App. 730, 551 P.2d 1046 (1976), be overruled." 563 P.2d at 202.

In *Barnes* the teachers were offered contracts at "severe reductions in salary," although the opinion does not indicate the actual dollar amount of the reduction.

This court in *Enstad, supra,* recognized the Washington decisions but stated:

"It appears to this court that the rationales found in both *McCullough* and *Barnes, supra,* are compatible with each other. The courts reached different conclusions based on entirely separate and distinguishable fact situations. One might conclude, based upon the Washington Supreme Court's statements in *Barnes, supra,* that a teacher in Washington, who has rights under the continu-

ing contract statute of that State, is subject to reasonable extracurricular reassignments providing the contract offered constitutes an offer containing 'substantially identical contractual terms and conditions' as existed under the teacher's current contract of employment." 268 N.W.2d at 132.

The decisions from Washington and South Dakota, as well as decisions of other jurisdictions cited in *Enstad,* indicate that if the new contract involves a reasonable change in or addition to curricular or extracurricular assignments, the school districts are acting within their authority under a continuing contract law. However, in this instance we do not understand Quarles to be challenging the change in assignment or duties, but rather we understand her position to be that the reduction in salary was so substantial that the offer of the school board amounted to a nonrenewal of her contract. The district court in its decision recognized Quarles's position but stated:

"The present case lies somewhere in between the *Enstad* and *Barnes* cases. The plaintiff was offered neither new nor additional duties. The contract contemplated that her duties would consist of teaching one fewer of the same classes she had previously, with consequently fewer students, and the duties of principal would no longer be placed upon her.

"It seems obvious that if an offer of a contract which includes increased duties is characterized as an offer of continued employment, then certainly an offer which involves fewer duties must likewise be so characterized. Does it, however, become different if the reduction in duties carries with it a reduction in salary? I think not.

"A school board, of necessity, must have the right to restructure its system. This may consist of reducing the number of teachers, with a corresponding increase in duties of those who remain. In such a situation the released teachers come within the provisions of the nonrenewal procedures set forth in Sec. 15–47–38(5). Some or all of the teachers who remain must necessarily be offered contracts which differ in responsibility from that contained in the previous contract. It is not possible to offer to renew the previous position exactly, because that position no longer exists. A board can, however, offer continued employment, but any changes must be reasonable. A board could not, for example, use the excuse of hiring additional teachers to reduce an existing teacher's duties and salary to the point that no reasonable person could accept the employment.

"A contract of employment tendered to a teacher previously employed by a school board which involves reduced responsibilities, together with a corresponding reduction in salary, constitutes an offer of re-employment. If the offer is reasonable, the teacher has the option of accepting or rejecting it. If it is unreasonable, the teacher may reject it and seek reinstatement of employment at the previous agreed compensation, or seek monetary damages.

"The salary offered the plaintiff was $1,925 less than she was previously earning, and that is certainly a significant figure. She was being offered substantially the same salary as the other teachers, however, and the reduction is consistent with the reduction in duties.

"The reasons why the board decided to so restructure were explained in detail. The changes were made in good faith, and, in fact, represent an increase in costs to the school district. The board did offer the plaintiff re-employment, albeit at a reduced rate, and the board's motivation in doing so was reasonable, as well as the offer itself."

In its conclusions of law the district court determined that the school board's motivation was reasonable and the offer was reasonable. Because Quarles did not accept the board's offer of reemployment the district court further concluded that any further employment rights under Sections 15–47–27 and 15–47–38, N.D.C.C., were terminated.

Although the reasons for the board's decision to restructure the teaching staff were explained in detail, none of these explanations was given until after Quarles had objected to the proffered contract. Whether or not an offer of a contract which contains a significant reduction in salary is reasonable may be difficult to determine until after a discussion of the matter has taken place. The school board had discussed the matter at several meetings at which the teachers, including Quarles, were present. At one of those meetings, the school board minutes reflect that Quarles indicated she carried a too heavy workload and that an additional teacher would be preferable to teacher aides. However, the statement cannot be read to indicate that the school board and Quarles discussed a reduced salary for the other teachers currently on staff. Quarles was not present at the meeting at which the school board determined to hire an additional teacher and reduce Quarles's duties as well as her salary. Only after the contract with reduced duties and reduced salary was offered did the school board, at Quarles's insistence, discuss salary with her.

■ Our decision in *Enstad, supra,* should be read to permit a school board to assign new duties and classes for which the teacher is qualified or to remove duties and classes without the necessity of following the procedure specified for nonrenewal of a teacher's contract in Sections 15–47–27 and 15–47–38, N.D.C.C. We believe these powers are necessarily implied in the authority given to school boards by Section 15–29–08(2), N.D.C.C., to "organize, establish, operate, and maintain such elementary and high schools as it [the school board] may deem requisite and expedient, ..." However, we agree with the rationale of the Washington Supreme Court in *Barnes, supra,* that when the adjustment of duties results in a severe reduction in salary for curricular activities the nonrenewal procedures must be followed. It is apparent to us that salary is, for most persons, the single most significant portion of a contract. To expect a teacher to accept or reject a contract with a severe reduction in

salary for curricular activities, without providing the teacher with a nonrenewal hearing as required by Section 15–47–38(5), N.D.C.C., is to ignore that fact. It would permit to be accomplished indirectly, without a hearing, what cannot legally be accomplished directly without a hearing. The *Enstad* decision and the cases cited therein apply to a change in assignment of duties without a reduction in salary or with a corresponding increase in salary. Except for *Barnes, supra,* none of the cases cited therein involves a severe reduction in salary and the decision in *Barnes* required that the nonrenewal procedure be followed in those instances in which the new contract contained a severe reduction in salary. This court's reconciliation of the decision in *Barnes* with the decision in *McCullough, supra,* reflects our present conclusion.

If we were to agree with the district court's position that the school board need not follow the nonrenewal procedure because of the severe reduction in salary we nevertheless would be faced with a dilemma. In the memorandum opinion the district court indicated that Quarles's rejection of the board's offer of reemployment terminated any further employment rights under Section 15–47–27. Subsequent to the issuance of the memorandum opinion but prior to the execution of the findings of fact, conclusions of law, and order for judgment, Quarles's counsel, pursuant to Rule 52(b), N.D.R.Civ.P., took issue with the trial court's statement that Quarles had "refused to accept" the contract. The response of the district judge was that the use of the word "refused" was his way of saying that Quarles did not notify the board that she had accepted the offer of the contract tendered to her. The proposed findings of fact and conclusions of law, prepared at the trial court's direction by counsel for the school district, contained the statement that Quarles "refused to" accept the board's reasonable offer of reemployment. Those words were deleted and inked in with the trial judge's initials were the words "did not." Thus that conclusion of the trial court read:

"3. Since the Plaintiff did not accept the board's reasonable offer of reemployment, any further employment rights under Sections 15–47–27 and 15–47–38 were terminated."

Where there is a difference between the memorandum opinion and the findings of fact, the findings of fact prevail. *Harwood v. Harwood,* 283 N.W.2d 144 (N.D. 1979). Furthermore, the action of the district judge in specifically indicating that Quarles did not accept the offered reemployment rather than that she had refused to accept the offered reemployment is conclusive.

The offer to Quarles was withdrawn at the time the notice of contemplated nonrenewal was sent on April 1, 1981. The contract had been offered to her sometime after March 19, 1981. The fact that Quarles "did not accept" rather than that she "refused to accept" is significant because under the provisions of Section 15–47–27, N.D.C.C., the teacher must be given a minimum of 30 days in which to accept or reject the offer of reemployment. It is only when the teacher has not accepted the offer of employment within the minimum period that the teacher's failure to accept is deemed a rejection of the offer. The school board withdrew the offer before the minimum 30-day period had expired. Because the offer was not extended for the time required by statute, Quarles's nonacceptance of the offer during the time it was extended could not deny her the rights to which she was entitled under Section 15–47–27. The termination of the offer before the 30-day period had expired meant that Quarles had not been offered reemployment as contemplated by the statute. If the teacher is not offered a contract for the ensuing school year the teacher is entitled to the usual written contract for the ensuing school year and must "notify the school board ... in writing of his or her acceptance ... on or before ... May fifteenth, ...." In this case the withdrawal of the offer by the school district before the minimum 30-day period had expired would have, without more, entitled Quarles to accept by May 15, 1981, the same contract as she had for the current year. There was, of course, "more." At the time the school board withdrew its offer of employment to Quarles it also notified her that it was contemplating not renewing her contract and a hearing was held as required by Section 15–47–38(5), N.D.C.C.[3] Quarles argues, however, that this procedure was not sufficient to extinguish her continuing contract rights because the school board did not follow the required procedure.[4]

Quarles notes that during the hearing on the contemplated nonrenewal she requested a continuance but it was denied. The school board's position is that the statute, Section 15–47–38(5), requires the school board to grant a continuance only if it is requested at the beginning of the hearing. The statute, at the time of the meeting, read in part: "Upon such hearing, if the teacher so requests, he shall be granted a continuance of not to exceed seven days."[5]

3. This procedure was instituted by the school board at the suggestion of Quarles's representative, who had told the board that its offer of reemployment amounted to a nonrenewal of the contract and that the nonrenewal procedures should be followed.

4. Because the district court believed the offer of reemployment was reasonable it concluded the school board was not required to adhere to the statutory provisions governing the nonrenewal of a teacher's contract. As a result the district court did not reach the issues raised by Quarles involving the nonrenewal procedures. Although the district court did not rule on those issues we view them to be, for the most part, questions of law. The fact that the decision of the trial court cannot be sustained on the basis of the findings of fact does not preclude this court from sustaining the decision on other grounds. *Watkins Products Incorporated v. Anhorn,* 193 N.W.2d 228 (N.D.1971).

5. This particular provision of Section 15–47–38(5), N.D.C.C., was amended, effective July 1, 1981, to read:

"At the meeting, if the teacher so requests, he shall be granted a continuance of not to exceed seven days." See Chapter 210, Sec. 2, 1981 N.D.Sess.Laws.

There is no doubt under this provision that the teacher is entitled to a continuance at any time during the meeting as a matter of right. The

The school board argues that the term "upon" should be construed to mean "at the beginning of" rather than "during," and it contends that although Quarles had an absolute right to request and receive a continuance at the commencement of the meeting, once the meeting commenced she was entitled to a continuance only if she showed cause for a continuance. We do not agree. The placement of the provision in the statute following the provision requiring the board to explain, discuss, and confirm the reasons for the contemplated nonrenewal indicates that the continuance might be requested following the discussion. It may be that only at that time will the teacher be informed of the specific details of the reasons for the contemplated nonrenewal and it may be only at that time would the teacher marshall her forces to rebut those matters. The provision is couched in mandatory language and, as a general rule, we conclude that a teacher is entitled to request and receive a continuance at any time during the meeting without showing any cause therefor.

In this instance, however, it would appear unreasonable to conclude that the denial of the continuance affected this matter. The addition of another teacher to the staff was discussed by the school board, the teachers, and parents of some of the pupils prior to the time Quarles was offered a contract; after the contract was offered to Quarles she objected to the reduction in salary and met twice with the school board concerning the offer; on March 30, 1981, the school board met, Quarles was present, and she objected to the offer; on March 31, 1981, the school board met again, at Quarles's request, and with Quarles and her representative present; at the March 31 meeting Quarles and her representative suggested to the school board that the procedure was faulty and they suggested that the school board, rather than offering Quarles a contract with a reduced salary, should have given her a notice of contemplated nonrenewal of the contract pursuant to Section 15–47–27, N.D.C.C.; the reasons for the offer were discussed at all of these meetings; on April 1, 1981, the school board met and issued a letter of contemplated nonrenewal to Quarles; and on April 2 the school board met for the meeting with Quarles as required by Section 15–47–38(5) and the reasons for reducing the salary were again discussed. Although we hold that a teacher is entitled to a continuance, as a matter of law, if the teacher requests the continuance at any time during the meeting between the teacher and the school board required by Section 15–47–38(5), we will not, in the case at bar, reverse the decision of the school board for failure to allow the continuance. The reasons for the nonrenewal had been well discussed by the school board prior to the statutory meeting and there could be no surprise on the part of Quarles, nor has Quarles argued that the denial of the continuance caused her any harm. In light of these circumstances we would exalt form over substance were we to hold the nonrenewal improper because of the failure of the school board to grant a continuance. Sec. 31–11–05(19), N.D.C.C.

■■ Quarles also argues that the notice of contemplated nonrenewal was void because the special meeting of the school board on April 1, 1981, at which time the school board determined to send Quarles the notice of contemplated nonrenewal, was invalid in that it was held without notice contrary to statute.[6] Quarles's argument is

minutes of the House and Senate Education Committees which heard the bill (S.B. 2072) do not reflect that the change in language was substantial rather than grammatical.

6. Section 44–04–20, N.D.C.C., provides:
"*Notice of public meetings required—Exceptions—Schedule set by statute, ordinance, or resolution.* Unless otherwise provided by law, public notice must be given in advance of all meetings governed by section 44–04–

19. This notice shall contain the date, time, and location of the meeting and, where practicable, the topics to be considered. However, the lack of an agenda in the notice, or a departure or an addition to the agenda at a meeting, shall not affect the validity of the meeting or the actions taken thereat. In cases where the public body holds regularly scheduled meetings, the schedule of these meetings, including the aforementioned notice information, shall be filed annually in

that notwithstanding the fact that this was a special or emergency[7] meeting of the school board, the board was required by the statute to give notice. Quarles's position is, essentially, that the provision relative to special or emergency meetings is not a substitute for the notice ordinarily required but rather is an *added* notice of meetings held on short notice. We do not agree. Section 44–04–20, N.D.C.C., was enacted as Chapter 477 of the 1979 Session Laws (H.B. 1380). It obviously was not the intent of the Legislature to require a more cumbersome notice for a special or emergency meeting than for a regularly scheduled meeting. See Minutes of the Senate State and Federal Government Committee of Feb. 26, 1979.

The statute also requires the Attorney General to prepare guidelines for the public bodies holding meetings governed by the statute. Those guidelines indicate that for emergency or special meetings no written notice need be posted. A posted notice is the only notice, other than notice to the news media, which could be required under the statute because it is impossible to file a schedule of emergency meetings of a school board with the county auditor. Thus the only notice applicable to emergency or special meetings which would also be applicable to regularly scheduled meetings would be the posted notice, and the guidelines

indicate that notice is not required for emergency meetings. Quarles has not argued that any members of the news media requested to be informed of the special or emergency meetings of the school board. The opinion of an agency charged with the administration of a statute is to be given weight by the courts in determining the intent of that statute. See, e.g., *In re Dilse*, 219 N.W.2d 195 (N.D.1974). This rule of construction would appear to be particularly true in those instances in which the Legislature has specifically required the agency, in this case the Attorney General, to prepare guidelines to assist public bodies in following the provisions of the statute. We conclude that the meeting of the school board was not invalid because of improper notice and that, as a result, the notice of contemplated nonrenewal was not void.

 Finally, we consider whether or not the reasons given by the school board for the nonrenewal were contrary to the statute, Section 15–47–38(5), N.D.C.C. That provision requires that the reasons "shall be sufficient to justify the contemplated action of the board and shall not be frivolous or arbitrary but shall be related to the ability, competence, or qualifications of the teacher as a teacher, or the necessities of the district such as lack of funds calling for a reduction in the teaching staff." We

January with the secretary of state for state-level bodies, the city auditor for city-level bodies, and the county auditor for all other public bodies. This schedule shall be furnished to anyone who requests the information. In addition, every public body shall post public notice of each of its meetings at its principal office, if such exists, and at the location of the meeting. The public body's presiding officer shall have the responsibility of assuring that such public notice is given at the same time as such public body's members are notified, and that this notice is available to anyone requesting such information. "In the event of emergency or special meetings of a public body, the person calling such a meeting shall notify representatives of the news media, if any, located where the meeting is to be held and which have requested to be so notified of such special or emergency meetings, of the time, place, date, and topics to be considered at the same time as such public body's members are notified.

"Where reasonable and practicable, a public body should attempt to set a regular schedule for its meetings by statute, ordinance, or resolution.

"The attorney general shall prepare general guidelines to assist public bodies in following the provisions of this section.

"Unless otherwise specified by law, resolution, or ordinance, or as decided by the public body, notices required by this section do not have to be published. The provisions of section 12.1–11–06 shall not apply to this section."

7. The April 1, 1981, meeting was a special meeting of the school board and there can be little doubt that it was an emergency meeting because the notice of contemplated nonrenewal, which Quarles and her representative had suggested should be given, must be given by April 1. See Section 15–47–38(5), N.D.C.C.

have indicated that in reviewing the action of the school board we cannot substitute our judgment for that of the school board but rather we are limited to determining whether or not the reasons given are adequate and whether or not the school board abused its discretion in determining to not renew the teacher's contract. *Dobervich v. Central Cass Public School Dist.*, 302 N.W.2d 745 (N.D.1981).

The district court did not consider the issue of whether or not the reasons given for nonrenewal were in accordance with Section 15–47–38(5), N.D.C.C., because it believed the offer made to Quarles was a reasonable offer of reemployment within the meaning of Section 15–47–27 and that the nonrenewal procedures were not required. However, in determining that the offer of reemployment was reasonable, the district court concluded:

"The teacher is entitled to a reasonable offer of reemployment, and the only question is whether or not the board's offer was reasonable. The contract offer contemplated that Plaintiff's duties would consist of teaching one less class than she had previously, with consequently fewer students, and the duties of the Principalship would be placed elsewhere. The contract offer which involved fewer duties was a reasonable employment offer which Plaintiff chose not to accept. The salary offered to Plaintiff was substantially the same salary as offered to the other teachers for the 1981–82 school year, and the reduction in Plaintiff's contract offer was consistent with the reduction in duties. The Defendant district's school board, of necessity, has the right to restructure its system. The reasons for the restructuring were explained in detail and the changes were made in good faith.

Such changes resulted in an increase of instructional costs to the Defendant district for 1981–82 of $11,475. The Defendant's motivation in offering the reduced salary was reasonable, as well as the offer itself."

The district court determined the offer of reemployment was reasonable, and it necessarily follows that the same reasons given for nonrenewal of Quarles's contract could not be frivolous or arbitrary but rather were related to the necessities of the school district. We therefore conclude the school board acted within its authority in not renewing Quarles's contract.[8]

For the reasons given herein the judgment of the district court is affirmed.

ERICKSTAD, C.J., and PEDERSON, PAULSON and SAND, JJ., concur.

---

8. Although the school board offered Quarles a contract at a reduced salary and then withdrew the offer in order that nonrenewal proceedings could be instituted as suggested by Quarles, it did not again offer Quarles the position after the school board determined to not renew her contract with its previous terms. Offering Quarles the position after determining to not renew her previous contract with the same terms might have been a useless act in view of

Quarles's obvious dissatisfaction with the new offer. *Fercho v. Montpelier Pub. Sch. Dist. No. 14*, 312 N.W.2d 337 (N.D.1981). However, it would have served to strengthen the school board's position that its reason for initially reducing the salary offer to Quarles and subsequently determining to not renew her contract with its same terms was not a subterfuge to force Quarles to resign. See concurring opinion in *Fercho, supra.*