Carol NIELSEN, Conservator of the Estate of Evelyn M. Olson, Petitioner and Appellee,

v.

CASS COUNTY SOCIAL SERVICES BOARD and North Dakota Department of Human Services, Respondents and Appellants.

Civ. No. 11219.

Supreme Court of North Dakota.

Oct. 28, 1986.

---

Nilles, Hansen, & Davies, Fargo, for petitioner and appellee; argued by Richard Henderson.

Blaine L. Nordwall, Asst. Atty. Gen., North Dakota Dept. of Human Services, Bismarck, for respondents and appellants.

GIERKE, Justice.

This is an appeal from a district court judgment reversing a decision of the Department of Human Services (the Department) to terminate Evelyn Olson's medical assistance benefits. We affirm.

Evelyn began receiving medical assistance benefits from the Department on March 1, 1983. Subsequently, Evelyn's daughter, Carol Nielsen, was appointed conservator to handle Evelyn's affairs. When Evelyn's mother, Ida Carlson, died, Evelyn was to inherit property by intestate succession, with an estimated value of $23,000, from Ida's estate. However, Evelyn, through her conservator, renounced the interest in Ida's estate. The Department determined that Evelyn's interest in Ida's estate prior to the renunciation constituted an inchoate property right which it deemed to be an available resource to Evelyn disqualifying her under Section 50–24.1–02, N.D. C.C., from receiving further medical benefits. When Evelyn renounced her interest in the estate, the Department determined that the renunciation constituted a transfer of property under Section 50–24.1–02(1), N.D.C.C., which also disqualified Evelyn from receiving further medical assistance benefits.

Evelyn requested and received an administrative hearing whereupon the termination of her medical assistance benefits was affirmed by the Department. Evelyn appealed to the district court which reversed the Department's decision on the ground that Evelyn's interest in Ida's es-

tate did not constitute a disqualifying resource and that the renunciation did not constitute a disqualifying transfer.

Prior to renouncing the inheritance on Evelyn's behalf, Carol moved for and obtained a court order approving the renunciation. *See* Section 30.1–29–01, N.D.C.C. The Department concedes that it had actual notice of the hearing on Carol's motion and that it did not make an appearance to object to the renunciation. *See* Section 30.1–29–05, N.D.C.C.

The Department does not dispute either the probate court's approval or the validity of the renunciation. The issue of whether the probate court should have approved the renunciation is therefore not before us on this appeal, nor is the issue of a conflict of interest regarding Carol's dual status as conservator for Evelyn and as potential beneficiary of the renounced inheritance.

The dispositive issue on appeal in this case is whether Evelyn's interest in Ida's estate constituted a resource or the renunciation of the interest constituted a transfer disqualifying her from receiving further medical assistance benefits.

■ When a district court decision involving a review of an administrative agency is appealed to this court, we review the decision of the agency and look to the record compiled before it. *Schultz v. North Dakota Department of Human Services,* 372 N.W.2d 888 (N.D.1985). Resolution of the issue before us involves the interpretation and application of a statutory provision which is a question of law fully reviewable by this court.

■ Subsections (1) and (3) of Section 30.1–10–01, N.D.C.C., provide in relevant part:

"1. [T]he representative of an incapacitated or protected person, who is an heir, ... may renounce, in whole or in part, the right of succession to any property or interest therein, ... by filing a written renunciation under this section.

\*       \*       \*       \*       \*       \*

"3. Unless the decedent or donee of the power has provided otherwise, the property or interest renounced devolves as though the person renouncing predeceased the decedent.... A renunciation relates back for all purposes to the date of the death of the decedent or the donee of the power."

The foregoing provisions unambiguously provide that the effect of a renunciation is to treat the interest as though it never passed to the renouncing party, because that party is deemed to have predeceased the decedent from whom the interest would have been received. The provisions further unambiguously provide that "for all purposes" the renunciation relates back to the date of the decedent's death. The Department's view that Evelyn's interest in Ida's estate should be treated as an available resource or that her renunciation of it should be treated as a disqualifying transfer is inconsistent with the requirement that a renunciation relate back to the date of the death of the decedent "for all purposes."

■ Absent an express statutory provision to the contrary, a renunciation is not treated as a fraudulent transfer of assets, and the renouncer's creditors cannot on that ground claim any rights to the renounced property. *See In the Matter of the Estate of Colacci,* 37 Colo.App. 369, 549 P.2d 1096 (1976); *Coomes v. Finegan,* 233 Ia. 448, 7 N.W.2d 729 (1943). The motive underlying the renunciation is not relevant to the right to renounce. *Estate of Oot,* 95 Misc.2d 702, 408 N.Y.S.2d 303 (1978). Regarding the effect of a renunciation, the Comment to Uniform Probate Code (U.L.A.) § 2–801(d) states in relevant part:

"*Rights of Creditors and Others:* As regards creditors, taxing authorities and others, the provision for 'relation back' has the legal effect of preventing a succession from becoming operative in favor of the disclaimant. The relation back is 'for all purposes' which would include, among others for the purpose of rights

of creditors, taxing authorities and assertion of dower."

We are unpersuaded that there is a valid distinction upon which to allow the Department to benefit by treating a renunciation as a transfer although the renouncer's creditors and the tax department cannot.

■ Section 30.1–10–01, N.D.C.C., provides for no exceptions to treating a renunciation as relating back to the date of the death of decedent. However, under Section 30.1–10–01(4)(a)(2), N.D.C.C., the legislature has provided that the right to renounce may be barred by written waiver. The Department does not assert that such a waiver was obtained by it from Evelyn as a prerequisite to receiving medical assistance benefits, and it cannot now attempt to secure a de facto waiver by treating Evelyn's renounced interest or the renunciation, itself, as disqualifying her from receiving benefits.

■ We do not believe that the result we reach today by our interpretation of the effect of renunciation under Section 30.1–10–01, N.D.C.C., conflicts with the legislative intent regarding eligibility requirements for medical assistance benefits under Section 50–24.1–02, N.D.C.C. Under that eligibility provision no person can receive medical benefits who has made an "assignment or transfer" of property for the purpose of becoming eligible to receive benefits. The legislature did not expressly make "renunciation" a disqualifying act, although it could have easily so provided; nor did it define the terms "assignment" or "transfer." However, as commonly understood, those terms connote an act of designating or conveying a thing from one person to another. One who assigns or transfers a property designates the assignee or transferee and the terms of the conveyance. In contrast, one who renounces a bequest or inheritance under Section 30.1–10–01, N.D.C.C., cannot designate the recipient or otherwise control the disposition of the renounced property.

By refusing to allow the Department to treat a renunciation under Section 30.1–10.–01, N.D.C.C., as a disqualifying act under Section 50–24.1–02, N.D.C.C., we are aware that the potential exists for individuals to refuse an inheritance or bequest which, absent the refusal, would be available to pay the costs of medical care for the renouncing party otherwise paid for by the Department. However, the legislature has provided an adequate tool to prevent such a result in authorizing that one's renunciation rights may be barred by written waiver. In view of this simple and adequate remedy we are unwilling, through judicial interpretation, to erode or infringe upon the clear legislative expression that a renouncing party is deemed to have predeceased the decedent and the renunciation made effective back to the date of the decedents death for all purposes.

In accordance with this opinion, the judgment of the district court is affirmed.

MESCHKE and LEVINE, JJ., concur.

VANDE WALLE, Justice, dissenting.

I dissent. This is not an appeal from the decision of the county court of a decision to permit renunciation under Section 30.1–10–01, N.D.C.C. Rather, as noted by the majority opinion, it is an appeal from a decision of the Department of Human Services to terminate Evelyn Olson's medical assistance benefits because the Department considered Evelyn's interest in her sister Ida's estate an inchoate property right which it deemed to be an available resource to Evelyn disqualifying her under Section 50–24.–1–02(1), N.D.C.C., from receiving further medical benefits. Carol Nielsen, the conservator of her mother's estate, was notified by Cass County Social Service Board that should Nielsen's petition for renunciation be granted, Evelyn would be ineligible for further benefits until such time as she may have incurred medical expenses equaling her interest in Ida's estate, some $23,000. Despite the notification, Nielsen, who would benefit personally by the renunciation of her mother's interest for which she petitioned as conservator of her mother's estate, pursued the petition and it was granted. As they had promised in an "Ad-

vance Notice" to Nielsen and a letter to her attorney, the Department disqualified Evelyn from further benefits until she incurred $23,000 in medical expenses.

The majority opinion gives only passing reference to Section 50–24.1–02(1), N.D. C.C., which provides that medical assistance may be paid for any person who either has income and resources insufficient to meet the costs of necessary medical care and services and who has not "at any time before or after making application for medical assistance made an assignment or transfer of property for the purpose of rendering himself eligible for assistance under this chapter." This statute has equal standing with Section 30.1–10–01, N.D.C.C., and the two must be construed together. The majority has failed to do this, stating only that subsections 1 and 3 of Section 30.1–10–01, "unambiguously provide that the effect of a renunciation is to treat the interest as though it never passed to the renouncing party, ..." Although the majority opinion cites authority in support of its contention, those cases involved only creditors of the person renouncing and did not consider the interpretation of *two* statutes such as are involved in the appeal before this court. I do not believe these cases are definitive of the issue before us on this appeal.

Although not specifically stated in the majority opinion, it is apparent to me that it gives a very broad construction to Section 30.1–10–01 and a very narrow construction to Section 50–24.1–02(1) by construing the term "assignment or transfer" as used in the latter statute to exclude a renunciation under the former statute. With all due respect to the Comment to the Uniform Probate Code quoted in the majority opinion, I submit that the juxtaposition of the *two* statutes involved in this appeal creates an ambiguity which we must reconcile giving due regard to the meaning and purpose of Section 50–24.1–02(1) as well as Section 30.1–10–01.

It is widely known that as a result of soaring medical costs, medical assistance for the needy has become a substantial, if not onerous, part of both Federal and State expenditures. There can be little doubt that the purpose of Section 50–24.1–02(1) was to require those who have assets available to them to pay for medical assistance to pay those costs from those assets in order that those who have no assets available may be provided for from the public fisc. It is apparent to me that the legislative intent in enacting Section 50–24.1–02(1) was to prevent a person from purposely becoming impoverished in order to obtain medical assistance at the taxpayers' expense and to the benefit of the person's relatives and heirs. The result reached by the majority opinion does violence to that purpose and intent. The result can justifiably be considered by the taxpayers as a "rip-off."

There are several other rules of statutory construction which should be considered in resolving this issue. The provision in Section 50–24.1–02(1) relative to disqualification for benefits because of assignment or transfer of property for the purpose of rendering a person eligible for assistance was added to the statute in 1975. See 1975 N.D.Sess.Laws Ch. 447, sec. 1. Section 30.1–10–02(1) was enacted in 1973 as part of the Uniform Probate Code. See 1973 N.D.Sess.Laws, Ch. 257, sec. 1. If there is a conflict in statutes the later in enactment prevails. And if a general provision is in conflict with a special provision in another statute and the conflict is irreconcilable, the special provision prevails. Sec. 1–02–07, N.D.C.C. Section 50–24.1–02(1) is a special provision concerning medical assistance for needy persons whereas Section 30.1–10–01 is a part of the Uniform Probate Code which generally applies to all persons succeeding to an interest in property.

More important, the construction placed upon a statute by the agency charged with its administration is to be given weight and we have stated that this rule of construction is particularly true in those instances in which the Legislature has specifically required the agency to prepare guidelines to assist in following the provisions of the

statute. *Quarles v. McKenzie Public School Dist. No. 34,* 325 N.W.2d 662 (N.D. 1982). Here, the Department is required by statute to prepare guidelines to assist in the administration of the statute. Sec. 50-24.1-02(3), N.D.C.C. It considers Evelyn's interest in Ida's estate as a "resource" within the meaning of Section 50-25.1-02, N.D. C.C. That position is not at all unreasonable and should prevail under the circumstances of this case.

Finally, this court has held that if adherence to the strict letter of a statute would lead to injustice or absurdity, the spirit of the law prevails over the literal meaning of the particular language of the statute for the purpose of construing the statute to give effect to legislative intent. See, e.g., *Loney v. Grass Lake Public Sch. Dist. No. 3,* 322 N.W.2d 470 (N.D.1982). I believe the construction placed upon these statutes by the majority opinion to be a clear injustice.

The Department should not have to seek a written waiver of the right of renunciation in order that the effect of that statute be implemented. Furthermore, the Department did not attempt to recover benefits paid prior to the renunciation; it only disqualified Evelyn for benefits for a period of time subsequent to the renunciation *after notice* that it would do so if the renunciation were effected. I cannot see any substantial distinction between a waiver as a condition of receiving benefits initially and a notice that benefits will be discontinued subsequent to a renunciation.

We were told at oral argument, and the editorial comment so indicates, that Section 30.1-10-01 is designed to aid in postmortem planning and that renunciation may be made for a variety of reasons including carrying out the decedent's wishes not expressed in a properly executed will. Such a reason cannot and should not be permitted to overcome the broad public policy set forth in Section 50-24.1-02(1). Although lawyers may be required to so advise their clients in order that the clients be fully informed, I am not yet willing to concede that our society, at least in North Dakota,

is at a place where we should assume that decedents would cast their relatives on the welfare roles to reserve their estate for other family members.

I would reverse the decision of the trial court and affirm the decision of the Department of Human Services.

ERICKSTAD, C.J., concurs.